## Ex parte H. O. JEFFERIES.

### No. A-1749.    Opinion Filed July 9, 1912.

(124 Pac. 924.)

1.  **EVIDENCE—Circumstantial Evidence.** All evidence is largely circumstantial, and evidence, when most direct, depends upon circumstances for its credibility, weight, and effect.

2.  **SAME.** In cases depending upon circumstantial evidence, where the circumstances proven are not only consistent with the guilt of a defendant, but are also inconsistent with his innocence, such evidence in weight and probative force may surpass direct evidence in its effect upon the court or jury.

3.  **SAME.** A single circumstance standing by itself may be of no value as evidence. Two, or three, or more circumstances taken together might not be sufficient to justify a conviction; but, where a multitude of circumstances are proven and are considered together, they may irresistibly establish the guilt of a defendant.

4.  **SAME.** The link and chain theory with reference to circumstantial evidence is rejected, and the rope or cable theory is adopted. **Ex parte Hayes et al.,** 6 Okla. Cr. 321, 118 Pac. 609, and **Ex parte Harkins,** ante, 124 Pac. 931, approved and reaffirmed.

(Syllabus by the Court.)

Application of H. O. Jefferies for a writ of *habeas corpus.* Writ discharged.

On the 25th day of April, 1912, a preliminary trial was commenced before F. L. Hill, a justice of the peace in and for Nowata county, in a case then pending before said justice, wherein the petitioner was charged with the offense of murder. When said trial was completed, said justice ordered that petitioner be committed to jail without bail to answer said charge before the district court of said county. Petitioner obtained a writ of *habeas corpus.* Writ discharged.

*Bert Van Leuven* and *O. L. Rider,* for petitioner.

*Smith C. Matson,* Asst. Atty. Gen., *W. V. Thraves,* Co. Atty., *Walter D. Humphrey,* and *J. A. Tillotson,* for the State.

7 Cr.—17

FURMAN, P. J. (after stating the facts as above). This is a case depending entirely upon what is known as "circumstantial evidence." It is therefore proper for us to consider the value of such evidence. Some courts hold that circumstantial evidence is of secondary importance and is inferior to what is called "direct or positive evidence." Our investigation and reflections have caused us to reach a different conclusion. All evidence is largely circumstantial, and even when most direct it depends upon circumstances for its credibility, weight, and effect. By way of illustration, suppose that a number of persons witness a homicide, and all testify that they saw A. point a rifle at B., who was standing some fifty yards away; that they saw a flash and heard the report of an explosion; that they saw B. fall to the ground, and upon going to his body found a small hole in his forehead and a similar hole in the back of his head; and that B. immediately died. This would be called a case of direct and positive evidence. The evidence would be direct and positive only to the extent that they saw A. point a rifle at B., that they saw a flash and heard the report of an explosion, that they saw B. fall to the ground, that upon examination they found a hole through his head, and that he died immediately. No witness could testify as a matter of fact that he saw the bullet come out of the gun and pass through the head of B. That the witnesses saw a flash and heard the report of an explosion, based upon past experiences—that is, circumstances—would prove that A. had fired the gun. Yet it would be possible that A. may have missed B., and another may have fired the fatal shot. To carry this illustration further, suppose that half of the witnesses who saw the homicide testified that B. was not attempting to make an assault on A. at the time of this occurrence, and the other half of the witnesses testified that before A. fired his gun B. had fired at A. This would present an issue of fact to be settled by the jury, and the determination of this question would depend upon a great variety of circumstances, among which might be mentioned the interest or want of interest, bias or want of bias, of each witness in the case, the intelligence of the wit-

nesses, the question as to whether or not they or any of them were suffering from any such physical or mental defect as would impair their sight, hearing, or memory, the viewpoint from which each witness saw the homicide, and the reputation of each witness for truth and veracity. Many other circumstances might be mentioned. All such circumstances must be considered by a jury in weighing the credibility of the witnesses in every case, whether it be of direct or circumstantial evidence. Suppose, for further illustration, we take the case of a contested will, where a number of witnesses testify that they were present and saw the testator execute the will and they signed the same as witnesses at his request, and their evidence is not disputed so far as human testimony is concerned; but, upon an examination of the paper on which the will was written, it is found that the date of the watermark in the paper was several years subsequent to the time of the death of the deceased, which would be the more satisfactory and therefore the best evidence, the direct testimony of these witnesses, or the circumstance of the date of the watermark in the paper? Suppose a number of witnesses testify that they saw a man thrust his hand into a bucket of water, and on taking it out a hole remained in the water where the man's hand had been. It matters not how positive and direct such testimony was, no sane jury would accept it. Why? Because their past experience, based upon circumstances, teaches them that it is contrary to the laws of nature for a hole to remain in water when a solid object is taken therefrom. This knowledge of the laws of nature and this past experience rest upon a great variety of circumstances too numerous to mention. A thousand different illustrations could be made to the same effect.

From these and other reflections we have come to the conclusion that it is a mistake to say that "circumstantial evidence" is inferior to what is commonly called "positive and direct testimony." The truth is that no human testimony is superior to doubt even in cases of the most direct proof. It is always possible that witnesses may err unintentionally or may corruptly falsify their testimony for reasons which are at the time not ap-

parent and not known. If the law required mathematical certainty either as to matters of fact or as to the conclusions drawn by the courts and juries, the enforcement of law would be impossible.

In *Coleman v. State,* 6 Okla. Cr. 252, 118 Pac. 594, this court said:

"Law is not based upon fixed and unchangeable facts, and therefore is not, and cannot become, an exact science. It never has required mathematical certainty either on the part of courts or juries. In the very nature of things, more should not be required than moral certainty of the guilt of a defendant before inflicting legal punishment, and moral certainty admits the possibility of error in every case. It is largely on this ground that the pardoning power is placed in the hands of the Governor. This is done principally to enable him to give a prisoner the benefit of any new discoveries that may be made favorable to him after his conviction. It is manifest that no one can say as a matter of knowledge that any given person is guilty of a crime for which he has been convicted. It is always possible in any case that the witnesses for the prosecution may have committed perjury or they may have been mistaken as to the facts with reference to which they have testified; and it is also always possible that jurors may have been influenced by improper motives or they may have misunderstood and misapplied the law and the evidence in the case; and it is also always possible that in any case the appellate court may be mistaken as to the law or mistaken as to its application to the facts of the case. If knowledge was required of courts or juries, it would be impossible to have society, government, and law. Matters of knowledge relate to commonplace things of life. The most of the things we believe are spiritual. Herein lies the true distinction between brutes and human beings. The brute knows; the human being not only knows, but also believes and exercises faith. Experience shows that a man is far more apt to be right when he places his belief and faith and action upon a reasonable basis than he is apt to be right when he thinks that he is acting upon his personal knowledge. Of necessity nearly all of our acts are based upon belief, and but few of them are based upon knowledge. If we only acted on knowledge, we would not accomplish much in life. There are very few things we know for certain. No man knows as a fact that his wife loves and is faithful to him; but most men would stake their lives upon their faith in their wives. Without this faith the marital relation would not be endurable, and would

soon cease to exist, and society itself would crumble to pieces, and the world would relapse into the darkness of barbarism. Our everyday experience confirms the statement. of inspiration that 'by faith we live, move and have our being.' The truth is that the only possible standard of action for the enforcement of law is that we must believe to the same degree of moral certainty that we act upon in matters of the gravest concern to ourselves, and, when we so believe and act, we meet the full measure of our duty."

We feel justified in saying that, in cases of circumstantial evidence, where the facts or circumstances which are proven are not only consistent with the guilt of the defendant, but are also inconsistent with his innocence, such evidence in weight and probative force may surpass direct evidence in its effect upon the jury.

A single fact standing by itself may be of no value as evidence; two or three or more facts or circumstances taken together might not be sufficient to justify a conviction; but where a multitude of facts · or circumstances, some of which may be slight, are taken together and proven to be true, they may irresistibly compel the jury to return a verdict of guilt in a case of the most serious moment. In cases depending upon direct testimony, where but few facts are involved, it is a very easy matter to fabricate the evidence in such a manner as to make detection almost impossible. Herein lies the greatest danger in cases depending upon direct evidence. In cases depending upon circumstantial evidence, witnesses may swear falsely as to the circumstances relied upon; but experience shows that it is impos-. sible to fabricate consistency in the circumstances themselves, where many facts are involved. As the law requires, in cases of circumstantial evidence, that the facts or circumstances proven to be true must not only be consistent with the guilt of the defendant, but must also be inconsistent with his innocence, the impossibility of fabricating consistency in the circumstances makes this class of evidence as safe and reliable as human testimony can become.

Suppose for a moment that it was the rule of our being, and that we were so constituted, that we could not believe anything

unless it were demonstrated to us by our own senses, or was tes-
tified to by the direct evidence of an eyewitness. What would
then be our condition? We would only be able to punish such
crimes as were perpetrated in the presence of spectators. All
secret murders, arsons, burglaries, forgeries, and other offenses
could be committed with absolute impunity. Nor would the mis-
chief stop there. Few civil controversies could be settled by
juries. No book of original entries could be received in evi-
dence; no note or obligation would avail, unless there was a sub-
scribing witness. Indeed, this would not be sufficient, for if
he died before trial, the claim would expire with him. An insur-
ance on the life of the witness would not even avoid the diffi-
culty, for the policy would die with its attesting witness. For
the same reason, all receipts would perish with those who saw
them signed, and all our deeds and muniments of title would be
swept away by the death of the subscribing witnesses and the
magistrates before whom they were acknowledged. All proof
of handwriting by comparison being annihilated, commerce would
be destroyed, or remitted to its infancy in barbarous ages. With
the abolition of legal punishment for crime, mob laws and vigi-
lance committees would supersede the use of courts and juries,
and the whole framework of society would be impaired, if not
destroyed. Not only do business men answer letters, pay drafts,
and credit others to the extent of millions daily upon the testi-
mony of circumstances alone, but they commendably carry this
faith, as the evidence of things unseen, into the reasoning which
connects them with the world beyond our own. A trifling cir-
cumstance—the fall of an apple—has proved to the satisfaction
of philosophers the great laws of gravitation which control the
motions of the universe. The same kind of testimony is the prop
of our belief in all the great truths of revelation. If we turn
from the world without, to the great mechanism within us, we
see again that no rational man pauses for one instant to doubt
the force of circumstantial testimony. What evidence have we
that it is a heart that beats or a brain that throbs within us,
except from the fact that those organs exist in all similarly con-

stituted beings? And we accept remedies for "all the ills that flesh is heir to, "upon precisely the same faith in circumstantial evidence. See Com. v. Twitchell, 1 Brewst. (Pa.) 551.

In the case of Hickory v. U. S., 151 U. S. 303, 14 Sup. Ct. 334, 38 L. Ed. 170, the trial court, in referring to the necessity of determining the condition of the mind of the accused, said:

"Some say we cannot do it by circumstantial evidence, because it is cruel and criminal, they say, to convict a man upon circumstantial evidence. This is a declaration of either fools or knaves, sympathetic criminals, or men who have not ability enough to know what circumstantial evidence is, or to perform the ordinary duties of citizenship. When you consider that these two mental conditions, the fact that the act was done willfully, and done with malice aforethought, can never in any case be found in any other way than by circumstantial evidence, you can see the potency in every case of that class of testimony. Circumstantial evidence means simply that you take one fact that has been seen, that is produced before you by evidence, and from that fact you reason to a conclusion."

An exception was reserved to this instruction; but Chief Justice Fuller, in delivering the opinion of the court, without discussion declared that the objection was without merit.

There is a deep-rooted and widespread feeling, not only on the part of the public, but among many members of the legal profession and many courts, that circumstantial evidence is to be considered as a chain, of which each circumstance relied upon constitutes a separate and distinct link, and that each such circumstance or link must be proven by the same weight and force of evidence and must be as convincing in its conclusiveness of guilt as though it was the main issue in the case. The fallacy of this theory lies in the fact that it makes every such circumstance or link stand by itself and depend alone upon its own strength. It matters not how strong some links in a chain may be; the weaker links will not gain strength by being connected with the stronger links. It is manifest that no chain can be stronger than its weakest link. It is utterly impracticable to apply the chain theory to matters of belief. The man who would apply this theory to his private affairs would never accomplish anything.

He would be everywhere looked upon as a self-confessed fool. Why should we apply a theory to the administration of justice in our courts which we repudiate in every other transaction of life? It is an accepted maxim that straws floating on the surface prove the way that the current is flowing. Every man's experience demonstrates that his beliefs are based upon a great number of circumstances, many of which standing by themselves are not fully proven and would amount to nothing, but which, when combined together, give strength to each other and constitute proof as strong as holy writ. From these and other reasons this court has repudiated the chain theory with reference to circumstantial evidence, and has adopted in its place the rope or cable theory as being more in harmony with reason and human experience, and therefore more efficacious in the administration of justice. For further discussion of this matter, see *Ex parte Hayes et al.,* 6 Okla. Cr. 321, 118 Pac. 609, and also *Ex parte Harkins, ante,* 124 Pac. 931.

The chain theory is largely responsible for the misconception and consequent prejudice which exists in the minds of so many persons against circumstantial evidence. When we start out with false premises, we are sure to arrive at an unsound conclusion. It may be stated as an axiom that truth is never derived from or will seek companionship with error. It is therefore of the utmost importance that we base our conclusions not only on sound reasoning, but also upon true premises. Instances have been industriously collected in which persons have been wrongfully convicted upon circumstantial evidence which are invariably used for the purpose of intimidating courts and juries and preventing them from enforcing the law upon this class of testimony. But a fair investigation will show that these instances are rare when compared with the great volume of business transacted, and that they have occurred at times and places remote from each other. An investigation will show that a much larger per cent. of persons have been convicted improperly upon direct and positive evidence. The Savior of mankind was crucified upon direct and false testimony. In the first and second

verses, twenty-third chapter of St. Luke, we find the following:

"1. And the whole multitude of them arose and led him unto Pilate.

"2. And they began to accuse him, saying, We found this. fellow perverting the nation, and forbidding to give tribute to Caesar."

Here was direct and positive testimony which Pilate himself did not believe, but upon which he acted on account of the clamor of the rabble. Stephen, the first martyr in behalf of Christianity after the crucifixion of Christ, was convicted and executed upon direct and perjured testimony. In the sixth chapter of Acts, tenth, eleventh, twelfth, and thirteenth verses, we have a statement of the testimony upon which he was condemned. It is as follows:

"10. And they were not able to resist the wisdom and the spirit by which he spake.

"11. Then they suborned men, which said, We have heard him speak blasphemous words against Moses, and against God.

"12. And they stirred up the people, and the elders, and the scribes, and came upon him, and caught him, and brought him to the council.

"13. And set up false witnesses, which said, This man ceaseth not to speak blasphemous words against this holy place, and the law."

If we are going to reject circumstantial evidence because at some remote time and in distant localities some few persons. may have been unjustly convicted thereon, we should be consistent, and we must also reject all testimony, because a great many more persons have been unjustly convicted on direct testimony than have ever been convicted on circumstantial testimony.

The record in this case contains something like 1,000 pages. In it we find the testimony given upon the preliminary examination and also the testimony given upon the examining inquest, and also a great number of affidavits and counter affidavits filed by the petitioner and also by the state. When the argument was finished, we requested counsel on each side to file a synopsis of the testimony upon which they relied. This was done to prevent the members of this court from overlooking any fact which

either side thought was material to its case.  Realizing the importance of this case to petitioner and to the state, we have laboriously, and carefully read every word in this record and have endeavored to classify this testimony and to give to each fact or circumstance, whether proven by the state or by petitioner, its due weight in our consideration of the case.  To make a complete written review of all this testimony would more than fill a volume of our reports, and we see no good that could be accomplished by so doing, for our decision is only preliminary, and a jury with the witnesses before them must finally pass on the truthfulness of the testimony.

We do not deem it necessary to do more than say that, applying the principles of law hereinbefore discussed to this testimony and considering it all together, we have reached the conclusion that bail should be denied petitioner pending the final hearing.  For the conditions under which bail should be either granted or refused in a capital case, see *Ex parte Harkins, ante,* 124 Pac. 931.

The writ of *habeas corpus* is discharged, and petitioner is remanded to the custody of the sheriff of Nowata county to await trial on the accusation pending against him.

ARMSTRONG and DOYLE, JJ., concur.