The record revealing no error, the judgment is affirmed.

---

## ODELL v. STATE. (No. 7278.)

(Court of Criminal Appeals of Texas. June 6, 1923. Rehearing Denied Oct. 17, 1923.)

1. **Burglary ⊜⇒20—Indictment held to sufficiently describe house burglarized.**

Indictment charging burglarized house was occupied by named person sufficiently described the house as against motion to quash.

2. **Indictment and information ⊜⇒86(2)—Allegations held sufficient to state in what county burglarized house was situated.**

Allegations of an indictment that accused, in the county of B., did then and there break and enter a house, etc., sufficiently alleged that the house was situated in B. county.

3. **Criminal law ⊜⇒784(7)—Charge on circumstantial evidence held not objectionable as not applying test of exclusion.**

Charge, that it is not sufficient that the circumstances all taken together may coincide with and render probable the guilt of the accused party, but they must be of such a nature as to exclude to a moral certainty every other reasonable hypothesis than that of his guilt, *held* not objectionable as not applying the test of exclusion.

4. **Criminal law ⊜⇒815(12)—Instruction telling jury to believe accused and no other person committed offense is erroneous, where evidence shows accused and others committed offense.**

When there is evidence that accused and others committed the offense, it would be an

error against the state to instruct 'that the jury must believe to a reasonable and moral certainty that accused "and no other person" committed the offense.

**5. Criminal law ⇐792(2)—Trial court must charge upon law of principals, when testimony shows participation of others with accused.**

When testimony raises the participation of others with the accused in the commission of a crime, it is the duty of the trial court to give appropriate instructions upon the law of principals.

**6. Burglary ⇐41(1)—Circumstantial evidence held to support conviction of burglary.**

Circumstantial evidence *held* to support conviction for burglarizing a bank.

**7. Criminal law ⇐559—Jury may indulge in reasonable presumptions.**

The jury is justified in indulging in reasonable presumptions.

Appeal from District Court, Bandera County; R. H. Burney, Judge.

Johnny Odell was convicted of burglary, and appeals. Affirmed.

W. S. Ethridge, of Bandera, and Ch'ambers, Watson & Johnson, of San Antonio, for appellant.

W. A. Keeling, Atty. Gen., and O. L. Stone, Asst. Atty. Gen., for the State.

LATTIMORE, J. Appellant' was convicted in the district court of Bandera county of burglary, and his punishment fixed at five years in the penitentiary.

[1, 2] The indictment charged that the burglarized house was "occupied by A. Meadows." Appellant moved t'o quash the indictment for the reason that the house was not sufficiently described and that an allegation that such house was "occupied by" was not sufficient. In our opinion appellant was wrong.· Pyland v. State, 33 Tex. Cr. R. 382, 26 S. W. 621; Scroggins v. State, 36 Tex. Cr. R. 117, 35 S. W. 968; Hasley v. State, 87 Tex. Cr. R. 444, 222 S. W. 579. In his Criminal Forms Mr. Willson states it thus: "A house there situate and owned (or occupied as the case may be) by C. D.," etc. The trial court correctly overruled appellant's motion to quash. The allegation that Johnny Odell, in the county of Bandera, and state aforesaid, did then and there break and enter a house, etc., sufficiently alleges that the house in question was situated in Bandera county.

[3] The court's charge on circumstantial evidence was as follows:

"In this case the state relies for a conviction upon circumstantial evidence alone, and you are instructed with reference to the law on circumstantial evidence that, in order to warrant a conviction upon such evidence that each and every fact necessary to establish the guilt of the accused party must be proved by legal and competent evidence beyond a reasonable doubt, and the facts and circumstances proved must not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of the defendant's guilt, and such facts and circumstances must produce in the minds of the jury a reasonable and moral certainty that the accused, either alone or acting in concert with another person, committed the offense charged; and you are further instructed that it is not sufficient that the circumstances all taken together may coincide with and render probable the guilt of the accused party, but they must be of such a nature as to exclude to a moral certainty every other reasonable hypothesis than that of the guilt of the accused as charged."

[4] We do not think this open to the objection that it does not apply the test of exclusion. Smith v. State (Tex. Cr. App.) 33 S. W. 339; Powers v. State, 69 Tex. Cr. R. 214, 152 S. W. 909. When there is evidence supporting a theory that the accused and others committed the offense, it would be an error against the state for the court to instruct the jury that they must believe to a reasonable and moral certainty that the accused "and no other person" committed the offense. Reid v. State (Tex. Cr. App.) 57 S. W. 662; Ramirez v. State, 43 Tex. Cr. R. 455, 66 S. W. 1101; Bell v. State (Tex. Cr. App.) 71 S. W. 24.

[5] Appellant excepted to the court submitting the law of principals, on the ground that there was no evidence calling for such charge. We regret we cannot' agree with this contention. In our opinion appellant's 'attitude toward the burglary was on the same footing as that of Merritt and McMillan, who were in the car stopped by the officers on the road from Bandera t'o San Antonio on the night in question. When testimony raises the participation of other persons with the accused, it is the duty of the trial court to give to the jury appropriate instructions upon the law of principals. We do not think the court erred in refusing appellant's requested instruction for a verdict of not guilty.

[6] Appellant strenuously insists that' the evidence in this case is not sufficient to justify his conviction. On the night of December 5, 1921, at about 3 o'clock in the morning, a number of the inhabitants of the town of Bandera were awakened by a series of explosions. A car was heard to start, and by its lights it was seen to start down the road leading from Bandera to San Antonio. Another car was heard to start but where it went does not appear in the record. Investigation showed that the explosions occurred in a bank building, and the door of the safe of the bank was discovered to be blown off, the windows of the building were shattered, and other damage inflicted. It was found that a screen had been 'cut in the window,

and that entrance was originally effected in this manner was an inference. Various tools were scattered around the room, and on the walls, window facings, etc., were quantities of yellow soap. In attempting to telephone to San Antonio it was discovered that the telephone wires leading directly to that city were cut, but those to Hondo were intact, and telephonic communication with San Antonio was obtained via Hondo. Officers in San Antonio were notified of the occurrence. Within 30 minutes after the explosions and the discovery of the wrecking of the bank, cars seem to have started from Bandera toward San Antonio, and also from San Antonio toward Bandera. The sheriff of Bandera county testified that his party went as rapidly as they could toward San Antonio and that they crossed two small creeks on their way, and in each creek they noticed that water had been splashed on the sides of the tracks coming out of the stream, and also there were wet car tracks on the San Antonio side. They passed two camps by the roadside, and from one of them obtained information that a car had passed shortly before, going in the direction of San Antonio very rapidly. The San Antonio officers testified that, after obtaining the information from Bandera, a number of them got in a car and went up the Bandera road about 18 miles to a point where there was a large road roller partially filling the road. Here they stopped, turned their car across the remainder of the road and placed an oil barrel in front of the car, thus forming a barricade. Shortly after this had been done they heard a car coming and saw the lights of one coming down the road from Bandera hurriedly. The car ran up almost to the barricade before it could be stopped. The officers called to the men in the car to halt, but they began to back the car rapidly and one of the officers opened fire upon them with a trench gun. The windshield on the right-hand side of the car was shattered by the fire of the gun, and a man was seen to fall out of the car on the right-hand side thereof. The car then stopped. The officers went to it and arrested one Merritt and one McMillan. They found in the car a handbag which contained a wooden mallet, a hacksaw, hacksaw blade, a brace, several drills, some punches, a cold-chisel, some soap, cotton, and some candles. In the car they found three revolvers, a shotgun and a pint bottle about three-quarters full of some kind of liquid. They made a search for the third man, the man who had fallen out of the car, going up and down the fence line for some little distance, but being unable to find him, and, one of the men arrested being very badly wounded, the party went back to San Antonio and carried the men arrested and the articles found. They then returned to the place where they had arrested the party, and on their way met the party of officers coming from Bandera, and all returned together. They made further search and found blood on the south side of the road at the place where the shooting had occurred. They found where they thought the man had gone under the fence. They found a hat there in the ditch on the south side of where the car was when the shooting took place. The two men who were arrested in the car both had hats on their heads. By the fence on the south side of the road near where the shooting took place they found a handkerchief with some fuses and caps in it right under the wire and quite a lot of blood on the brush at the edge of the road before they got to the fence; the fuses were for dynamite caps.

On the morning of the 6th of December between 7 and 8 o'clock, at a point about three miles east of the place where the shooting had occurred, a witness for the state who was hunting found this appellant in a small live oak thicket out in a pasture. The point where he was found was about three quarters of a mile from the road. The attention of witness was attracted by the fact that appellant's face was scratched; he had his collar up and his coat pinned in front by a gold pin. He did not have on any cap or hat. The witness thought appellant had on a raincoat, a yellow one. This witness took appellant to the house of Louis Cardenas which was about a mile distant. He saw appellant no more after that. Louis Cardenas testified that about 7 or 7:30 o'clock on the morning in question appellant was brought to his house by the preceding witness. He thought appellant had on a dark coat and pants. He had on no hat. He was scratched up about the head, and had his coat buttoned up around his neck, and the collar turned up so that it covered part of his face. One of appellant's eyes was awfully bloodshot. Witness offered him something to eat but he would not take it. Appellant wanted to get to San Antonio and offered to give witness' son $5 to carry him there. Witness gave appellant a little cap belonging to his boy because he was bareheaded. This witness said he saw no raincoat or anything of that kind. He asked appellant how he got the bruises on his face, and received the reply that appellant had gotten lost in the bushes and had gotten scratched up that night. He said he had been out with three men and three women coon hunting and that he got lost and they left him out there. This witness lived about 15 miles from San Antonio.

Dave Cardenas, son of Louis Cardenas, testified that he took appellant to San Antonio in a Ford car and that appellant sat on the right side of witness. He stated that appellant had on a dark suit with white stripes in it, kind of little yellow stripes; that he wore nothing on his head. Witness drove appellant to a place in San Antonio

to which he was directed. He said appellant came back presently and stated he had no money but had a shepherd dog which he gave witness to hold for the $5. Witness drove appellant down to a filling station and left him there. He said appellant was in a very bad condition; that he stated he could hardly see. Appellant's eyes were bloodshot. Asked as to whether appellant had on an overcoat, he said he had on a small coat which he had fastened around his neck. A witness who saw the appellant in the car with the Mexican boy on the morning in question said that his attention was attracted by what looked like blood streaks on the side of appellant's face next to him.

Mr. Stark testified that on the morning of the 6th of December at about 9 or 10 o'clock he saw appellant on Alamo Plaza in San Antonio; that he went over to him and asked him what was the matter. Appellant replied, "I have got glass in my eye." Witness asked, "How come you to get that glass in your eye?" and that appellant replied that he broke a bottle. Witness asked him if that was not blood on his coat, and appellant replied that it was medicine that the doctor had given him for his eyes. Witness asked him how his clothes came to be torn like that, and appellant replied that it was an old tear, to which witness answered that it seemed to be fresh. Witness then said to appellant that he had better go to the station and let them see what was the matter with him and telephoned for the wagon. Appellant asked him what he wanted to send him in for. Witness said he put his hand in appellant's coat and found a flashlight. He took appellant to the recruiting station near the postoffice and there unbuttoned his overcoat and his shirt and found blood on the shirt on the left-hand side and found what he thought was a bullet hole in appellant's body. When witness found the bullet hole according to his testimony, appellant laid over on a chair and would not speak any more at all. Witness took appellant to the Robert Green Hospital. He said appellant was complaining about his eyes; that he had little specks in his face, also that appellant had on a light gray short overcoat. The shot which he found in appellant's body did not go through this overcoat but did go through appellant's shirt, also that there were four or five torn places in the sleeve of appellant's shirt.

Dr. Addison testified that he was standing near the postoffice in San Antonio the next morning after the Bandera bank was supposed to have been burglarized and appellant came over toward him and got up on the sidewalk; appellant was holding his arms in a peculiar way and was catching his breath short. Witness asked him what was the matter, and appellant replied that he was sick. Witness asked him how he was sick, and appellant replied that he was shot.

Witness asked him where, and he pulled up his clothes and showed him where there was blood on his left side; apparently a place right smartly torn. Blood was clotted and caked around the place, but it was fresh blood. Witness asked appellant how he got shot, and he said he did not know who shot him. Appellant's eye seemed as though it had sand or something in it; he kept wiping it with his handkerchief. About this time a policeman came up and took charge of appellant. The officers testified that when they shot at the car the man who fell out of the car had on a black and red mackinaw coat.

We have given the substance of the material part of the testimony. In our opinion, while the evidence is circumstantial, the circumstances are sufficiently connected and cogent to convince the unbiased mind of appellant's connection with the burglary. Bandera is a little over 50 miles from San Antonio. There is no doubt but that the bank building in Bandera was burglarized about 3 o'clock on the night of December 5th. The telephone wires between Bandera and San Antonio were cut. A car left Bandera on the San Antonio road directly after the bank building was blown up. The officers followed it on said road in a few minutes. Another party of officers started on the same road from San Antonio. Somewhere between the two converging parties of officers was a car containing in all human likelihood the men who had burglarized the bank. A car crossed the streams in front of the car occupied by the Bandera party of officers. A car coming rapidly in the direction of San Antonio passed by a camp on the roadside. A car coming from Bandera at about the hour in the morning one leaving Bandera near 3 o'clock and going rapidly would apparently reach the place where the road roller was in the road, was there stopped by the San Antonio officers. The occupants of the car declined to halt when so ordered. They tried to get away. They backed their car rapidly. The officers shot, breaking the glass of the windshield on the right side of the car. The man on that side of the car fell or jumped out of the car. The men in the car surrendered. They had on their hats. The man on the right who got out of the car was not found. A hat presumably his was found in a ditch. Blood was found. It was in the road and on bushes leading toward the fence. At the fence a handkerchief with fuses and caps in it was found. This was between 4 and 5 o'clock a. m. About 7 o'clock the next morning appellant was found about three-quarters of a mile from this road and about three miles nearer San Antonio than the place of the shooting. He was hidden in a thicket. He was hatless. He had glass in his eye, according to a statement later. He had scratches on his face. He was shot in the body. He gave an account of his presence which the jury were justified in believing to

be false. He said he was out there with three men and three women coon hunting the night before and that he had gotten lost from his party and they went off and left him. As far as we can ascertain from the record, no process was ever issued for any party and no effort made to show that any of this statement was true. Appellant was concealing himself and concealing the fact that he was shot, and apparently telling a falsehood in explanation of his presence. We attach no importance to the fact that the officers thought the man who got out of the car and made his escape had on a black and red mackinaw coat. It was in the nighttime, and they could be mistaken. If not mistaken, the coat could easily have been hidden. Such a coat would be known to its wearer to be an easy mark of identification.

[7] A jury trying a case are justified in indulging reasonable presumptions. We have here a man shot, bareheaded, with glass in his eye, and giving a false explanation of his presence. The state accounts for the shot, the bare head, the presence of the man. He accounts for none of these things and attempts no explanation. The jury were justified in their conclusion that he was the man who got out of the car.

As we view the testimony, there is little escape from the proposition that the men were in the car, who were caught between the two parties of officers on the road going toward San Antonio, a city with which telephone communication with Bandera had been cut—caught about 4:30 o'clock a. m.—coming from Bandera where a burglary had just been committed, in a car having in it burglar tools, such as soap, cotton, wooden mallet, a hacksaw, hacksaw blade, cold chisels, guns, revolvers, braces, bits, punches, etc., were guilty. We discuss the evidence no further.

Believing the record in this case shows no error the judgment will be affirmed.

### On Motion for Rehearing.

HAWKINS, J. No questions are presented in the motion for rehearing that were not considered on the original submission. The authorities cited in support of the motion do not sustain appellant's contention.

The motion for rehearing is overruled.