Lupe GALVAN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 56544.

Court of Criminal Appeals of Texas.

April 18, 1979.

Aubrey L. Roberts, Jr., Sweetwater, for appellant.

Frank Ginzel, Dist. Atty., Colorado City, Bill Hoffmann, Jr., Asst. Dist. Atty., Sweetwater, Robert Huttash, State's Atty., Austin, for the State.

Russell L. Carroll, Asst. Dist. Atty., Sweetwater, Alfred Walker, Asst. State's Atty., Austin, for the State on rehearing.

Before ONION, P. J., PHILLIPS and TOM G. DAVIS, JJ., and KEITH, Commissioner.

## OPINION

KEITH, Commissioner.

Appellant was indicted for intentional possession of more than four ounces of marihuana; the jury found him to be guilty and his punishment was enhanced because of a prior conviction and fixed at confinement for fifteen years.

Briefly, the record reflects that on April 7, 1974, James Hallmark discovered sixteen kilos of a substance later shown to be marihuana. The bricks of marihuana were in a barracks bag, under a tub, in an abandoned shed on his mother's farm near a house rented to appellant's father.

Hallmark reported his discovery to Sheriff Bill McGuire of Mitchell County who went to the place where Hallmark had seen the leafy green substance. Without procuring a search warrant or permission of anyone except Hallmark, the sheriff entered the building and seized the marihuana.

It was shown that after appellant had been released on bail he cursed Hallmark on the streets of Sweetwater and said, " 'Why didn't you go up there and tell my dad that you had found this marijuana?' "

Elsewhere, the State showed that he told the witnesses Sanford, Cunningham, Teaff, and Butler that Hallmark had cost him a lot of money, a lot of pot. Ricky Sanford testified that "two or three days maybe, after he got busted," and after he had gotten out of jail, appellant

" . . . told me, he said, that he had some weed, and that the marijuana was his. And he also said that he would get James Hallmark, or somebody, to shoot that bastard, for finding his weed."

Cynthia Butler, aged 17 at the time of trial, testified that appellant told her that he was "going to get James Hallmark for turning it [the pot] in." Appellant did not testify upon the trial nor was there a written confession offered by the State.

■ The second ground of error complains of the admission of the results of the search and seizure of the marihuana, the contention being that it was the result of an illegal search. We disagree. As noted earlier, the shed where the contraband was found was an abandoned tractor shed on a portion of the farm being rented by Hallmark's mother to appellant's father. Hallmark had some of his personal belongings in the shed as did his mother. There is no showing that appellant had any right to be in or to store anything in the shed. He was not present at the time of the search.

It was said in *Stiggers v. State*, 506 S.W.2d 609, 611 (Tex.Cr.App.1974):

"Here, the premises were not under the control of appellant and he was not present when the search was made. . . Appellant has no standing to question the legality of the search of premises not under his control when he was not present at the time of the search. *Schepps v. State*, 432 S.W.2d 926 (Tex.Cr. App.1968)."

Ground two is overruled.

There was no direct testimony introduced which linked appellant to the marihuana found in the shed except the several admissions (and threats) which appellant was quoted as having made. Assuming, *arguen-*

*do*, the sufficiency of such evidence to raise an issue of possession, we turn now to appellant's third ground of error reading: "The trial court erred in failing to properly instruct the jury on circumstantial evidence by omitting from such instruction the words 'and no other person.' "

The trial court's instruction on circumstantial evidence was in standard boiler plate language except for the omission noted above. A timely and proper objection was made to this omission from the instruction and appellant contends that his conviction cannot stand under the record. We agree for the reasons now to be stated.

As was said in *Ramos v. State*, 478 S.W.2d 102, 103 (Tex.Cr.App.1972):

"Where an accused is charged with the unlawful possession of a narcotic drug, two elements must be proven: (1) that he exercised care, control, and management over the contraband; and (2) that he knew that the object he possessed was contraband."

As in *Ramos*, the shed was open and had no lock. It was shown that Hallmark, the sheriff and probably others had no difficulty in gaining admittance thereto. In *Ramos*, the Court found that it was error for the trial court to refuse a charge on lack of knowledge of the presence of the contraband, and continued: "This error was compounded when the trial court also refused appellant's requested charge on circumstantial evidence." (Id. at 105) This language from *Ramos* is likewise material:

"The distinction between circumstantial evidence and direct evidence is that the latter applies directly to the ultimate fact to be proven, while circumstantial evidence is the direct proof of a minor fact which, by logical inference, demonstrates the fact to be proven. [citations omitted]

1. Upon oral submission of the cause, State's counsel called our attention to language found in *Herrera v. State*, 561 S.W.2d 175, 179 (Tex. Cr.App.1978). The fact structure of the two

"In the case at bar, no witness saw appellant exercise any control over the contraband. Nor was the contraband found within appellant's residence, where he would have had sole access to it. Instead, the marihuana was found at a place on appellant's property which was accessible to anyone." (Id.)

See also *Oliver v. State*, 551 S.W.2d 346, 350 (Tex.Cr.App.1977); *Williams v. State*, 521 S.W.2d 275, 276 (Tex.Cr.App.1975); *Scelles v. State*, 172 Tex.Cr.R. 474, 358 S.W.2d 623, 625 (Tex.Cr.App.1962).

State's counsel seeks to uphold the omission of the quoted language by reliance upon two cases:[1] *Odell v. State*, 95 Tex. Cr.R. 360, 254 S.W. 977, 978 (1923), and *Grego v. State*, 456 S.W.2d 123, 126 (Tex.Cr. App.1970). Neither case is in point. As noted in *Odell*, supra:

"When there is evidence supporting a theory that the accused *and others* committed the offense, it would be an error against the state for the court to instruct the jury that they must believe to a reasonable and moral certainty that the accused 'and no other person' committed the offense." (emphasis supplied)

This language from *Odell* was quoted in *Grego*, supra.

The State makes no contention that others were involved in the possession of the contraband. Indeed, under its theory of the case it could discharge its burden of establishing the guilt of appellant only by showing that he, *and no other person*, had possession of the marihuana. *Ramos*, supra. The omission of the quoted words "and no other person" from the charge significantly affected appellant's rights and constituted reversible error.

The judgment of the trial court is reversed and the cause is remanded.

Before the court en banc.

cases is so different that we do not find the holding in *Herrera* to be applicable to the case at bar.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

On original submission on a panel opinion[1] reversed this judgment of conviction for the offense of possession of more than four ounces of marihuana because the trial court deleted the words "and no other person" from a timely requested charge on circumstantial evidence. The panel opinion pointed out that, under the State's theory of the case, the only way it could discharge its burden of establishing the guilt of appellant was by showing that he, *and no other person*,[2] had possession of the marihuana. In its brief the State did not particularize any theory of party responsibility under V.T.C.A. Penal Code, §§ 7.01 and 7.02 and only obliquely suggested the charge was properly worded under "the evidence admitted," without pointing out under its counterpoint just what or where it is. Consequently, reasoned the panel opinion, the omission of the words "and no other person" from the charge significantly affected appellant's rights and constituted reversible error.

We granted the State leave to file a motion for rehearing in view of its reconstituted contention that the record evidences the fact that appellant's father may have been involved with the possession of the contraband at issue and that the words "and no other person" were deliberately omitted from the charge for that reason.[3] The State again would cite us to the tandem of *Odell v. State*, 95 Tex.Cr.R. 360, 254 S.W. 977 (1923) and *Grego v. State*, 456 S.W.2d 123 (Tex.Cr.App.1970) for the proposition that the words "and no other person" may be omitted from the charge if the evidence shows that there were other participants in the crime.

Let it be clearly understood at the outset that all agree that this is a circumstantial evidence case. There is no direct evidence whatsoever that appellant possessed the kilos of marihuana found in a burlap sack in a "tractor shed" on rural property owned by another who had rented it to appellant's father. Thus the sole question with respect to the circumstantial evidence charge that was given is whether, under the facts of this case, it should have included the phrase "and no other person" and, therefore, the trial court erred in deleting it in charging the jury. To answer the question it is fitting that some rudimentary propositions as to circumstantial evidence be revisited.

Because of its very nature, circumstantial evidence, like direct evidence, must not only be probative and weighty enough to prove the essential elements of the offense charged but also it must exclude very reasonable doubt of the guilt of the accused. 23 C.J.S. 560–561, Criminal Law § 907b. In a jury trial the mechanism for determining quality and quantity of the evidence is to submit a charge to the jury that instructs on the law of circumstantial evidence and applies it to the facts of the case, and thereby authorize the jury to respond according to its lights. Manifestly, to achieve a reliable determination the instructions must be faithful both to the law and to the particular facts of the case.

In Texas, as well as many other jurisdictions,[4] the basic principle is substantially as stated early on in *Jones v. State*, 34 Tex. Cr.R. 490, 30 S.W. 1059 (1895):

> ". . . No certain amount of evidence is necessary, in any criminal trial, to either convict, or to raise a reasonable doubt, and therefore in this cause, in the first instance, the evidence shows the involvement, real, apparent, or potential, of Lupe, Sr., and therefore, the view initially advanced by the State in *Odell* and *Grego* . . . is correct."

---

1. The panel opinion was written by the Honorable Quentin Keith, Commissioner of the Court of Criminal Appeals, for a panel consisting of Presiding Judge Onion and Judges Phillips and Tom Davis and himself.

2. Emphasis in original. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

3. Assembling bits and pieces of testimony, the State now argues:

4. See 23 C.J.S. 561, Criminal Law § 907c.

" . . . Error is urged because this charge[5] fails to instruct that such evidence must be of so conclusive a nature as to exclude every reasonable hypothesis except the guilt of the accused. The essential element of an instruction on the law of circumstantial evidence is that the facts and circumstances necessary to the conviction must be such as to exclude every other reasonable hypothesis except the defendant's guilt. The evidence must not only be consistent with the prisoner's guilt, but it must be inconsistent with every other rational conclusion."

Accord: *Smith v. State,* 35 Tex.Cr.R. 618, 33 S.W. 339 (1895) motion for rehearing overruled, 35 Tex.Cr.R. 618, 34 S.W. 960 (Tex.Cr.App.1896).[6]

As shown in the margin, however, the Court soon permitted variation on the same theme when it determined that the right of the accused was effectively protected by the charge that was given. See *Reeseman v. State,* 59 Tex.Cr.R. 430, 128 S.W. 1126, 1129 (Tex.Cr.App.1910) and *Powers v. State,* 69 Tex.Cr.R. 214, 152 S.W.2d 909 (Tex.Cr.App.1913). Then, almost brusquely it seems,[7] the Court confirmed as a correct instruction on circumstantial evidence, where a single accused was charged with acting alone, one which combined all the

functional equivalents in one expansive statement, *Manley v. State,* 69 Tex.Cr.R. 169, 153 S.W. 1138, 1141 (Tex.Cr.App.1913); *McGee v. State,* 69 Tex.Cr.R. 580, 155 S.W. 246 (Tex.Cr.App.1913); *Brown v. State,* 74 Tex.Cr.R. 356, 169 S.W. 437, 449[8] (Tex.Cr.App.1913) and provided the genesis for what is regarded today as, in the phrase of the panel opinion, "standard boiler plate language," as it appears in generally accepted form books such as 8 Texas Practice 168 ff., Willson's Texas Criminal Forms, Morrison & Blackwell, § 82.02; Texas Criminal Pattern Jury Charges (1975) 3, CPJC 0.01; McClung, Jury Charges for Texas Criminal Practice (Jan. 1979) 221; 1 Branch's Annotated Penal Code (2nd Ed.) 395, § 373.1.

■ Of course an accused may be charged with an offense on the theory that, although he did not, himself, alone commit it, he is criminally responsible for the conduct of the one or more other persons who did. His responsibility is as a party (nee principal)[9] to the commission of the offense, and the jury is ordinarily instructed accordingly. Illustrative is the delineation made in *Lawrence v. State,* 477 S.W.2d 275 (Tex.Cr.App.1972) with respect to *Sherrad v. State,* 167 Tex.Cr.R. 119, 318 S.W. 900 (1958). Sherrad agreed to sell a specified

5. The trial court had instructed in effect that in order to warrant a conviction on circumstantial evidence each fact necessary to the conclusion must be proved beyond a reasonable doubt and that the facts must be consistent with each other and the main fact and the circumstances taken together must be of a conclusive nature and "producing, in effect, a reasonable and moral certainty of the guilt of the accused."

6. In adhering to its pronouncement in *Jones v. State,* supra, the Court expressed satisfaction that it was consonant with an earlier opinion from another jurisdiction in which the jury was told that it "must not only find, to a moral certainty, that the accused committed the offense, but that *no other person* committed it; thus directly leading the mind of the jury to the question of exhausting every other reasonable hypothesis that might indicate that *some other person* than the accused committed the offense charged." That notion was confirmed in *Crow v. State,* 37 Tex.Cr.R. 295, 39 S.W. 574 (Tex.Cr. App.1897); yet, presently when confronted with the underscored phrase, the Court appeared to retreat from it or find that what was

instructed amounted to its functional equivalent, e. g., *Moore v. State,* 39 Tex.Cr.R. 266, 45 S.W. 809, 810 (Tex.Cr.App.1898), *Ramirez v. State,* 43 Tex.Cr.R. 455, 66 S.W. 1101 (Tex.Cr. App.1902) and *Moseley v. State,* 59 Tex.Cr.R. 90, 127 S.W. 178 (Tex.Cr.App.1910).

7. *Diaz v. State,* 62 Tex.Cr.R. 317, 137 S.W. 377, 378 (Tex.Cr.App.1911), may be viewed as a harbinger.

8. After quoting the instruction verbatim, the Court rejected unstated criticisms of it, noting "the charge as given has been so frequently approved by this court it almost seems unnecessary to cite authorities . . . ."

9. See *Pitts v. State,* 569 S.W.2d 898, 900 (Tex. Cr.App.1978) and note also therefrom that a charge on the law of parties may be given when supported by the evidence though that manner of criminal responsibility is not pled in the indictment; see also *LeDuc v. State,* 593 S.W.2d 678 (Tex.Cr.App.1979).

amount of marihuana and accepted partial payment; when the buyer returned the next day, however, Sherrad was not present, but one Robson approached and completed the transaction. In *Lawrence* the accused negotiated the purchase and told the officer that "my man" would deliver in ten minutes; in that time one Lott did and received the money. *Sherrad* was reversed for failure to charge on the law of principals and circumstantial evidence; *Lawrence* was affirmed for he was clearly acting together with Lott.

Lately explicated is that the concept of criminal responsibility as a party is to benefit the State rather than to protect an accused, e. g., *Romo v. State*, 568 S.W.2d 298, 302[10] (Tex.Cr.App.1978 opinion on rehearing) and *Ellis v. State*, 551 S.W.2d 407, 411[11] (Tex.Cr.App.1977).

■ Equally as rudimentary and as longstanding is that an accused charged with acting with another as a party in commission of an offense is not entitled to the protection of the standard circumstantial evidence charge. *Boersh v. State*, 62 S.W. 1060 (Tex.Cr.App.1901). In this situation the instruction substitutes for "no other person" a phrase such as in *Boersh*, "acting with some other person," and, even though the other person or others be named in the indictment, the charge is sufficient in using an appropriate substitute rather than specifying a name or names, for the jury will "look to the proof as to the others," *Reid v. State*, 57 S.W. 662, 664 (Tex.Cr.App.1900); *Serrato v. State*, 74 Tex.Cr.R. 413, 171 S.W. 1133, 1141 (Tex.Cr.App.1914).

■ Then there is the third situation that is actually a combination of the other two: When the state of the evidence is such that

an accused alone committed the offense *or* was acting together with another or others in doing so, the law of parties becomes applicable. *Odell v. State*, 95 Tex.Cr.R. 360, 254 S.W. 977 (Tex.Cr.App.1923) is that type of case and is relied on by the State to support what was done here to the standard circumstantial evidence instruction. See also *Traylor v. State*, 117 Tex.Cr.R. 323, 36 S.W.2d 506, 508[12] (1931).

The facts of *Odell v. State*, supra, are set out in full in its opinion. Based on them the Court was firm in the finding that participation of other persons with the accused was raised. In that posture, the Court held, that "it is the duty of the trial court to give to the jury appropriate instructions on the law of principals," as was done there over objections of the accused. Consistently, then, with the evidence and the theory of the State, when the trial court came to the circumstantial evidence instruction it modified the standard charge by substituting for "and no other person" the phrase "either alone or acting in concert with another person." This modification was correct because, the Court wrote:

". . . When there is evidence supporting a theory that the accused and others committed the offense, it would be an error against the state for the court to instruct the jury that they must believe to a reasonable and moral certainty that the accused 'and no other person' committed the offense."

Assuming in the case before us "there is evidence supporting a theory" that appellant and his father together committed the offense, had the court below followed *Odell v. State*, supra, and modified the standard charge as did the trial court in *Odell*, a problem would not exist.

10. "In a case where a charge on the law of parties is applicable, it is usually the State that insists on and is entitled to have such a charge, including an application of the law to the facts, submitted to the jury."

11. Such charge is "a State's charge and does not protect a defendant's rights," but does not eliminate the necessity for a charge on circumstantial evidence when that character of evidence is relied upon to establish guilt, *id.*, at 411.

12. While the charge as given is not set out in the opinion, apparently it provided enough "exclusivity" for the even then outdated *Moore v. State*, supra, said was sufficient for the Court to decide the issue on that theory. The notion of "joint possession" alluded to, though clearly supported by the evidence in view of the testimony of wife of appellant, was patently a "backup" expression.

But here there is neither theory that the appellant and his father were acting together [13] nor evidence of joint possession of the kilos of marihuana.[14] Thus, *Odell* and its lone offspring, *Grego*, are not in point.

■ We have reviewed again the entire record [15] before the Court and are satisfied that, notwithstanding defensive efforts to suggest alternatives, the case was tried on the single theory that appellant and no other person possessed the bag of kilos of marihuana found in the tractor shed. To refuse to include the phrase "and no other person" in the otherwise judicially approved standard circumstantial evidence instruction [16] is to withhold that protection to

13. Without any doubt the State tried this case on a theory that did not implicate the father of appellant. He was not alleged to be a party to possession of the marihuana. Indeed, he was called as a witness by the State to testify in such a way as to exculpate himself. The following testimony adduced by the State on direct examination is illustrative:

"Q: You don't know what was picked up?
A: They said it was marijuana [sic]—it's what they say.
Q: Did you know anything about that bag of marijuana [sic]?
A: No, sir.
Q: Do you know anybody that did?
A: No, sir.
          *     *     *     *     *     *
Q: *State whether or not you had anything to do with that tractor shed, where that bag of marijuana [sic] was found.*
A: No, sir."

Moreover, as he was being cross examined by counsel for appellant the State assumed the same protective stance a lawyer ordinarily takes for "his" witness. Thus, after a series of questions using the terms "your house" and "your place," the State objected:

"Your Honor, at this time, we move this constant repetition of 'your place'—*when the record shows he doesn't own the place*, in the first place—be stricken. He is a mere tenant. We ask that counsel be instructed not to use that term 'your place,' as if he is the owner in fee simple of it."

Pursuing the point on redirect examination, the State was emphasizing that Galvan Senior had rented just the residence and fenced garden when the following occurred:

"Q: And you paid nothing for the outbuildings?
A: No. *But I am entitled to use it.*
Q: Wait a minute. I didn't ask you that, did I?
          *     *     *     *     *     *
MR. GINZEL (The prosecutor): And I ask the Court to instruct the jury to disregard the last part of the witness' answer, as not responsive to the question   .   .   ."
That the trial court proceeded to do.

Further, in his final argument responding to the suggestion of appellant's counsel that many other people he named could have possessed the marihuana, the prosecutor asserted:

".   .   . [H]e is talking about all of these possibilities, you know, the State should exclude. That is not what the Court tells you. .   .   . It has got to be a reasonable hypothesis under the evidence.   .   .   . This stuff, this accomplice, this sneak, or whoever—whoever—and I say that this way, put it this way: There was nobody other than Lupe Galvan."

14. On cross examination appellant's counsel drew from Galvan Senior affirmative answers to questions designed to show that he had permission to use and easy access to the tractor shed in which the marihuana was found, as did others from neighboring places who from time to time took water from a well nearby. To this scenario the State added on redirect examination:

"Q: And you had nothing to do with that tractor shed yourself, did you?
A: No.
Q: Didn't pay any rent for it, did you?
A: No.
Q: Didn't intend to use it, and you didn't need it, did you?
A: I didn't need it; no, sir.
Q: As far as you know, that was just there, wasn't it? *You didn't have anything in it, did you*?
A: No. No, sir."

15. To demonstrate the location of the tractor shed in relation to the residence and other outbuildings and landmarks appellant introduced four photographs; each page in the record where index indicates each exhibit will be found bears a notation: "Original Exhibit Remains in Custody of Court Reporter." The same is true with respect to photographs and *other exhibits offered by the State.* How then is this Court expected to understand what was thought important enough to develop before and present to the jury as a part of the case? When evidentiary issues are raised on appeal the record must contain *all* the evidence for our review in order intelligently to decide the question. Those concerned with preparing, examining and approving the record should see that every exhibit admitted in evidence finds its way into the record.

16. A litany of challenges to the same charge was rejected in, e. g., *Thomas v. State,* 171 Tex.Cr.R. 54, 344 S.W.2d 453 (1961) and it was found to be "correct" in *Phea v. State,* 150 Tex.Cr.R. 77, 199 S.W.2d 160 (1947).

which an accused is entitled in such a case. Without it here, we are constrained to hold that appellant was not afforded the full benefit of a complete charge that required the jury to find that the evidence against him excluded every other reasonable hypothesis except his guilt.

The State's motion for rehearing is, accordingly, overruled.

DALLY, J. dissents.

DOUGLAS, Judge, dissenting.

The majority opinion overrules the State's motion for rehearing on the ground that the evidence did not raise the theory that anyone else, other than Galvan, possessed the marihuana. A careful reading of the record shows otherwise.

As the majority opinion stated, on April 7, 1974, James Hallmark discovered sixteen kilogram "bricks" of marihuana in a duffle bag underneath a washtub in an abandoned shed on his mother's property. The property was rented to Lupe Galvan, Sr., the appellant's father. The only evidence connecting Galvan, Jr. with the marihuana came from various witnesses who testified about several conversations with appellant where he discussed his arrest.

One such witness was Ricky Sanford who testified, in addition to the matters noted in the majority opinion, that between January and April of 1974 he sold marihuana for Galvan on at least twenty occasions. Though he was uncertain as to the last occasion on which he did so, he described the selling procedure as follows:

"A. Well, like I would go to his house, and like he would have some weed, marijuana, you know, already bagged up in Baggies. And we would have it in the ice chest in his bedroom. And whenever I would go up there, we would start smoking pot. And then after a while, which I knew that if he had some, that I could sell some for him. And all I would have to do was either take some with me and go downtown, or wherever, and sell it—or I could just go downtown and see who wanted some and then go back to his house and get the marijuana in the Baggies, and take it to them. They would give me the money, and I would take it bake to Lupe, Jr."

This evidence was sufficient to at least *raise* the issue that someone in addition to Galvan, Jr. had access to the marihuana. The evidence did not have to be so strong as to justify a charge on the law of parties under V.T.C.A., Penal Code, Section 7.02. Had the requested phrase "and no other person" been included in the charge, appellant's counsel would have been entitled to argue for an acquittal on the theory that the State could not prove Galvan's sole responsibility. An acquittal on this basis would be legally incorrect. In *Harrison v. State*, 555 S.W.2d 736 (Tex.Cr.App.1977), we held that to prove possession of a controlled substance requires proof of two elements: (1) that the defendant had care, custody, and control over the narcotics, and (2) that the defendant knew that the substance was contraband. In *Martinez v. State*, 539 S.W.2d 885 (Tex.Cr.App.1976), we held, as we have in countless cases, that possession of narcotics need not be exclusive; evidence that the defendant jointly possessed the contraband with another is sufficient to sustain the conviction. Thought the State must prove an affirmative link between the defendant and the contraband, circumstantial evidence is more than sufficient to provide that link. *Martinez v. State*, supra; *Damron v. State*, 570 S.W.2d 933 (Tex.Cr.App.1978).

It is this rationale that explains why it is error to the State to give the charge advocated by the appellant. In *Grego v. State*, 456 S.W.2d 123 (Tex.Cr.App.1970), we held that where the evidence showed that the defendant and two other persons were responsible for the theft, it was error to the

State to instruct the jury that the defendant and "no other person" committed the offense. There is no error here.

Even if the evidence were insufficient to raise the possibility of someone else's access to the contraband, appellant was not harmed by the omission. The jury was instructed that they had to find, beyond a reasonable doubt, that the defendant possessed the marihuana before returning a guilty verdict, and, in view of the nature of the evidence, that all the facts taken together had to produce, to a reasonable and moral certainty the conclusion that Galvan committed the offense. This instruction was certainly sufficient to protect appellant's rights.

It is time for this Court to re-examine its position requiring a charge on circumstantial evidence in many cases. Historically, courts have made distinctions between circumstantial and direct evidence because of the supposedly less reliable nature of circumstantial evidence. Four basic reasons have been suggested for the supposed unreliability: (1) that circumstantial evidence is inherently less accurate as proof; (2) that, historically, it has led to gross injustice; (3) that people have a psychological tendency to weave theories from the evidence and then to go to extreme lengths to defend them, and (4) that horrifying factual circumstances often lead to rash inferences by juries in order to establish guilt. See Note, The Circumstantial Evidence Charge in Texas Criminal Cases: A Retrograde Doctrine, 55 Tex.L.Rev. 1255 (1977).

The historical vice of circumstantial evidence has been coming under greater attack year after year. In *Holland v. United States*, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954), the Supreme Court of the United States held that where a jury is properly instructed on the reasonable doubt standard, an instruction on circumstantial evidence is "confusing and incorrect."

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equal-ly true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." 348 U.S. at 140, 75 S.Ct. at 137. For a discussion of the unreliability of eyewitness testimony, see *Loftus, Eyewitness Testimony* (Harvard University Press, 1979).

In *State v. Harvill*, 106 Ariz. 386, 476 P.2d 841, 844 (Ariz.1970), the Supreme Court overruled their long-standing rule that the omission of a charge on circumstantial evidence constituted fundamental error. In doing so, the court made the following observations:

"A similar view was expressed by the Honorable Learned Hand in *United States v. Becker*, 62 F.2d 1007 (2d Cir. 1933). Referring to the alleged error of the trial court in failing to instruct the jury as to the weight of circumstantial evidence, he said:

" 'The requirement seems to us a refinement which only serves to confuse laymen into *supposing that they should use circumstantial evidence otherwise than testimonial.* All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these as do inferences from events. A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position. That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have preceded it.' (Emphasis ours). 62 F.2d at p. 1010.

"Professor Wigmore discussing the relative probative value of direct and circumstantial evidence concluded:

" 'The rules of Admissibility have nothing to say concerning the weight of evidence when once admitted. * * * In-

deed, it can be said that there are no rules, in our system of Evidence, prescribing for the jury the precise effect of any general or special class of evidence. So far as logic and psychology assist us, their conclusions show that it is out of the question to make a general assertion ascribing greater weight to one class or to the other.' 1 Wigmore, Evidence (3d ed.), § 26, p. 401." 476 P.2d at 844–45.

Quoting from *Ex parte Jefferies*, 7 Okl.Cr. 544, 124 P. 924 (1912), the Arizona court stated that all "evidence is largely circumstantial and even when most direct it depends upon circumstances for its credibility, weight, and effect." After setting forth several hypothetical situations to illustrate this view, the court concluded that it was a mistake to distinguish between direct and circumstantial evidence. "The truth is that no human testimony is superior to doubt even in cases of the most direct proof."

In *State v. Gosby*, 85 Wash.2d 758, 539 P.2d 680, 684 (Wash.1975), the Washington Supreme Court also overruled the old requirement that a charge on circumstantial evidence should be given. In doing so, it relied heavily upon *Holland*, supra, and Professor Wigmore's treatise on evidence. Quoting from Wigmore, the court stated:

"It can be said that there are no rules, in our system of evidence, prescribing for the jury the precise effect of any general or special class of evidence. So far as logic and psychology assist us, their conclusions show that it is out of the question to make a general assertion ascribing greater weight to one class or to the other. The probative effect of one or more pieces of either sort of evidence depends upon considerations too complex. Science can only point out that each class has its special dangers and its special advantages. 1 Wigmore on Evidence, § 26 (3d Ed. 1940)."

The court observed that the circumstantial evidence charge is a "convoluted one", giving rise to the belief that a higher standard of proof than beyond a reasonable doubt is required when circumstantial evidence is involved. Again quoting from Wigmore, the court stated:

"When anything more than simple caution and a brief definition [of reasonable doubt] is given, the matter tends to become one of mere words, and the actual effect upon the jury, instead of being enlightenment, is likely to be rather confusion, or, . . . a continued incomprehension. In practice, these detailed amplifications of the doctrine have usually degenerated into a mere tool for counsel who desire to entrap an unwary judge into forgetfulness of some obscure precedent, or to save a cause for a new trial by quibbling, on appeal, over the verbal propriety of a form of words uttered or declined to be uttered by the judge. The effort to perpetuate and develop these elaborate unserviceable definitions is a useless one, and serves today chiefly to aid the purposes of the tactician. It should be abandoned. 9 Wigmore on Evidence § 2497 (3d Ed. 1940)."

In addition to the above authorities, the following jurisdictions have adopted the rationale of *Holland*: Alaska, *Allen v. State*, 420 P.2d 465 (Alaska 1966); Colorado, *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973); Delaware, *Henry v. State*, 298 A.2d 327 (Del.1972); Kansas, *State v. Wilkins*, 215 Kan. 145, 523 P.2d 728 (1974); Maine, *State v. Jackson*, 331 A.2d 361 (Me.1975); Nevada, *Vincze v. State*, 86 Nev. 546, 472 P.2d 936 (1970); Oregon, *State v. Draves*, 18 Or.App. 248, 524 P.2d 1225 (1974); Wyoming, *Blakely v. State*, 542 P.2d 857 (Wyo. 1975); and Rhode Island, *State v. Aurgemma*, 116 R.I. 425, 358 A.2d 46, 52, fn. 6 (1976).

Texas should join the growing list of jurisdictions who have abandoned the circumstantial evidence charge. The failure to do so will lead to nothing but obscure and pedantic decisions.

The judgment should be affirmed.