408 P.2d 234

**The STATE of Arizona, Appellee,**
**v.**
**Armando Martinez VALENCIA, Appellant.**
**No. 2 CA–CR 9.**

Court of Appeals of Arizona.
Nov. 30, 1965.

.Darrell F. Smith, Atty. Gen., Norman E. Green, Pima County Atty., Tucson, Carl Waag, Deputy County Atty., for appellee.

Arthur W. Vance, Jr., Tucson, for appellant.

MOLLOY, Judge.

This is an appeal from a conviction of grand theft of automobile parts.

Sometime between 3 p. m. and midnight on September 1, 1964, a 1958 Chevrolet Bel-Aire was taken from the front of the home of one Hugh Shearer in Tucson, Arizona. The next morning at approximately 7:15 a. m., the car was found some 25 miles from Tucson, stripped of its bumpers, front wheels, right fender, parking lights and front grill. The hood of the car had been removed but was laying beside the car on the ground. The car was two-toned blue in color. At the trial, the owner testified that the grill and the bumper had been recently rechromed.

· On September 2d, at approximately 11 a. m., the defendant appeared at a body shop in Tucson, Arizona and inquired as to the cost of installing upon his 1958 Chevrolet a right fender, a bumper, a grill and parking lights. The defendant's car was white in color. The defendant stated that he had purchased the parts that were needed. He was quoted a price of $40.00. The mechanic with whom the defendant was talking proceeded to the home of the defendant, which was close by and was told by the defendant that the parts were in a small garage. The mechanic may have seen the grill outside of the garage. Soon after, the defendant drove his car to the body shop, *sans* bumper, grill, parking lights and right fender. He brought with him the necessary parts to replace the missing items. These parts were subsequently identified as having been removed from the Shearer car. The right fender which the defendant brought had had the chrome decoration removed from the top of the fender. The four holes left by its removal, and the removal of a rear vision mirror, were filled in by the mechanic at the body shop. The defendant's 1958 Chevrolet did not have the decorative chrome on the top of its fenders as did the Shearer car.

On September 3d, a Tucson Police Department detective talked to the defendant at about 3 o'clock in the afternoon at the body shop. On being asked where he had acquired the parts, the defendant answered that he had "Picked them up somewhere." When pressed for a better answer, the defendant stated that he could not tell the officer anything further. Thereafter the defendant was arrested and charged with grand theft.

At the trial, the defendant took the stand in his own defense. He testified his car had had an accident on August 30th in which the right fender, bumper and grill had been damaged. The defendant had taken the damaged fender, bumper, grill and parking lights off his car. The next day, on August 31st, at a drive-in restaurant in downtown Tucson, he was approached by a man by the name of "Joe Salaz" and asked whether he wished to buy some parts off a wrecked '58 Chevy located at Salaz's home

in Benson. This man, whom the defendant did not know and had never seen before, stated that he wanted about $40.00 for these parts. The defendant stated that this was about the price that these parts could be purchased for at any junk yard.

On the morning of September 2d, according to the defendant, this same "Joe Salaz" drove up to his home at about 9 o'clock. Seeing that the parts were in good shape, he paid the stranger $40.00 for them. The defendant did not receive a receipt for the money paid nor any written evidence of the purchase.

The defendant testified he had no recollection of the license plates on the truck Salaz was driving and had no reason to withhold any information in regard to "Joe Salaz" from the police. There had apparently been no search made for Salaz in Benson, or any other place, by the defendant. On the evening of September 1st, the defendant testified he went to a drive-in movie with two girls and that they left him off at his home at about 1 or 2 o'clock in the morning. The girls were not produced as witnesses at the trial. The defendant was impeached by evidence that he had been convicted of burglary in the first degree approximately two years prior to the trial of this action.

The defendant testified that at the time the parts were brought to his home by Salaz, two of his friends were there. These two friends testified at the trial in support of the defendant's story. Both of these witnesses were old friends of the defendant. One witness testified that the man Salaz drove into the defendant's yard and asked the defendant how much money he had. To this, according to the witness, the defendant responded that he had $40.00, whereupon the defendant paid the $40.00 to Salaz. This witness said he had never seen "Joe Salaz" before or since. He further testified that one section of the bumper so purchased was a little rusty or corroded and that the parts when unloaded from Salaz's truck were placed on the ground on the side of a garage.

The other friend of the defendant testified that he was coming onto the back of the defendant's property when the Salaz truck drove into the yard and that the defendant asked the stranger how much he wanted for the parts. To this a reply of $40.00 was received and the witness testified he saw the defendant give two twenty-dollar bills to Salaz. The parts were placed on the ground by the garage. This witness had not seen Salaz either before or since.

Pictures in evidence show that the Shearer car had a decorative piece of chrome running along the top of its fenders at the front portion thereof. The four holes left by the removal of this decorative molding and the rear view mirror from the stolen right fender are shown as they had been covered up by the mechanic employed by the defendant. The pictures of the Shearer car as it was found abandoned indicate by the thoroughness of the stripping of the whole front end that a substantial amount of work had been expended in removing the stolen parts.

The sole question raised on appeal is whether there was sufficient evidence in the record to support a conviction of the charge of grand theft.

It is the law of this state that: "The actual unexplained possession of recently-stolen goods is a fact from which the possessor's guilt may be inferred." Murphy v. State, 50 Ariz. 481, 483, 73 P.2d 110, 111 (1937).

This same law has been stated in a burglary case:

"It is well settled that, while evidence of the recent unexplained possession of stolen property is not sufficient, standing alone, to sustain a conviction of larceny, yet it is equally true that, where goods have been feloniously taken and they are immediately or soon thereafter found in the possession of a person who gives a false account or refuses to give any account of the manner in which he came into possession thereof, proof of such possession and conduct on the part of the accused

is sufficient to support a verdict of guilty, and, if the evidence in addition shows the goods have been feloniously taken by means of a burglary, it will support a conviction of the latter offense." Porris v. State, 30 Ariz. 442, 445, 247 P. 1101, 1102 (1926).

In Murphy v. State, supra, the story of the possessor was dubbed by the court as being "fishy." We believe this to be equally true of the story told by the defendant. The stranger who just happens to show up with the right parts needed by the defendant for his car, the day after he has had an accident, is an unlikely occurrence in itself. That a person would pay approximately the same to such a stranger as he could get the parts for from a reputable used parts retailer is also unlikely. Under these circumstances, particularly when cash is paid, it would seem that a receipt would be obtained. The removal of the decorative chrome molding on the fender is also corroborative of guilty knowledge. The mirror and chrome decoration were distinctive items which might identify the fender if they did not match defendant's car. The alleged stranger would have had no way of knowing that such decoration was not needed on the defendant's car and would have had no reason to remove the decoration. And if the defendant purchased the fender with the decoration on it, and was paying a man to install it, there would be no reason particularly why he would remove the decoration before taking the fender to the body shop. The recency of the possession is close (less than 20 hours after the theft), particularly when considering the labor needed to strip the parts off the Shearer car without doing substantial damage to them.

The refusal to give an explanation of the possession of these stolen parts when first interviewed by law enforcement officers is indicative of guilt. There was no explanation made as to why the defendant refused to give the information about "Joe Salaz" when first interrogated or why such information was withheld from law enforcement officials until the trial itself. The two "corroborating" witnesses were produced for the first time at the time of trial. That the two girls with whom the defendant claimed he was with on the night of the theft were not produced nor any explanation given for their nonproduction is also basis for an inference. 2 Wigmore, Evidence § 286, p. 167 (3d ed. 1940).

In considering all of these factors, this court is not inclined to hold that the jury had no basis for its verdict. The jury was instructed that possession of recently-stolen property standing alone was not sufficient to support a verdict of guilty. They were further instructed that they were not permitted to convict on circumstantial evidence unless the proved circumstances not only were consistent with guilt but were irreconcilable with any other rational conclusion, and that the proved circumstances must not only all be consistent with one another and consistent with the defendant's guilt but they must all be inconsistent with any reasonable theory or hypothesis of innocence.

We hold that the judging of the credibility of the witnesses in this case was for the jury and that the circumstantial evidence was sufficient to support a conviction. Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.