435 P.2d 857

The STATE of Arizona, Appellee,

v.

Trent Vernon WOOD, aka Lance Vernon Wood, Appellant.

No. 2 CA–CR 101.

Court of Appeals of Arizona.

Dec. 27, 1967.

Rehearing Denied Jan. 24, 1968.

Rehearing Denied Feb. 27, 1968.

40–886.02 under the authority of A.R.S. § 41–1304.02.

Darrell F. Smith, Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

Ralph E. Seefeldt, Tucson, for appellant.

MOLLOY, Judge.

The defendant appeals from convictions of burglary and grand theft; he contends the trial court committed fundamental error in instructing the jury.

The evidence, stated favorably to upholding the verdicts rendered below, State v. George, 95 Ariz. 366, 390 P.2d 899 (1964), indicates the defendant and his wife were guests in the home of the alleged victim on the evening before the alleged burglary. The defendant's wife and their hostess had become acquainted while employed together as waitresses in a restaurant. Keys to the home and to the victim's car were lying on a table in the room where the Woods were guests. The circumstances were such that they would have had an opportunity to have taken these keys without the knowledge of the owner. The victim first noticed the keys were missing after the burglary which occurred the next day.

On the day of the burglary, while the two waitresses were at work, the car in question was taken from the rear of the restaurant and the victim's home was entered and certain personal items were removed, which items included a Mexican ring, three men's suits, and three men's sport coats which belonged to the victim's "boyfriend." There were no signs of forcible entry of the home. The victim testified she believed she saw her Mexican ring on the defendant's wife's finger on this same day that the entry was made.

Two boys, who were playing across the street from the victim's home on the evening of the day in which the entry was

**24**

made, observed a man carrying items from the victim's home and placing them in her car which was parked in front of her home. One of these boys identified this man as being the person portrayed in a photograph admitted in evidence and the photograph in turn was identified as being that of the defendant. The other boy who witnessed the incident was not able to positively identify the defendant as the person seen taking the items from this home. The defendant, at the time of the alleged crimes, wore his hair long, combed into "wings." At the time of the trial, the defendant's hair was cut in shorter style. The boy unable to give a positive identification testified the "hair" in the photograph of the defendant looked like the hair of the man he saw going into the victim's house.

Early in the morning hours of the day after this entry was made, the victim's car was involved in a one-car accident on the highway between Gila Bend and Yuma. The defendant was identified as the driver of the car by the highway patrolman and the garageman who towed the car to a wrecking yard. Both the highway patrolman and the garageman noticed some items of men's clothing lying in the car. These were released to the defendant at his request by the garageman. The defendant told the highway patrolman that the owner of this vehicle was his girlfriend, that he had her permission to use the car in the Tucson area, but that he had decided to take the car to Yuma without her permission and therefore he was reluctant to have the highway patrolman make a report of the accident. The keys missing from the victim's home were in the car when she recovered it. The other items taken from the victim's home were never recovered.

The defendant complains the court did not properly instruct the jury of the elements of the crime of grand theft. The court, in language taken partly from A.R.S. § 13–661, told the jury that grand theft " * * * consists of the felonious stealing, taking, carrying, *or* driving away of the motor vehicle of another." (Emphasis

added.) The defendant did not object to this instruction nor request any instruction that there must be the specific intent to permanently deprive an owner of property. The defendant did, however, make a motion for a directed verdict at the close of the State's case on the grounds there was no showing the defendant intended to permanently deprive the owner of possession of this car, which motion was denied by the court, and, the defendant requested an instruction on joyriding which was refused by the trial court.

■ Despite the loose language of this statute, it is unquestionably the law of this jurisdiction that in order for there to be a theft of goods, there must be the intent to permanently deprive the owner of the goods. State v. Marsin, 82 Ariz. 1, 307 P.2d 607 (1957); State v. Parsons, 70 Ariz. 399, 222 P.2d 637 (1950); Whitson v. State, 65 Ariz. 395, 397, 181 P.2d 822 (1947).

■ The evidence here does not lead inexorably to a conclusion that there was intent to permanently deprive the owner of this motor vehicle. For this reason, and because the instruction given permitted a conviction, in the disjunctive, for either stealing or driving away the motor vehicle of another, we hold that fundamental error was committed by the trial court as to the grand theft charge.

The next contention of error pertains to both the grand theft and the burglary charge and is directed at the giving of an instruction:

"The Court instructs you that the actual unexplained possession of recently stolen goods is a fact from which the possessor's guilt may be inferred by you, the jury."

This was included in a State's requested instruction. A portion of the request, informing the jury that once the possession of recently stolen goods was established " * * * the burden of explaining to you how he obtained possession is upon the defendant * * *," was stricken from the

instruction at the defendant's objection. The only objection made to the instruction, as modified, was that it was not supported by the evidence.

On appeal, the defendant contends the instruction did not inform the jury that possession in and of itself was insufficient to support a verdict and the court did not state whether it intended the instruction to apply to the motor vehicle or the clothing which was reported to have been seen in the automobile while in the defendant's possession. Further, the defendant complains, the instruction assumed the defendant had stolen something.

■ We view this instruction as a correct statement of the law of this state. State v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967); Murphy v. State of Arizona, 50 Ariz. 481, 73 P.2d 110 (1937); State v. Valencia, 2 Ariz.App. 301, 408 P.2d 234 (1965). The giving of such an instruction is one of the well-recognized exceptions to the rule that the court will not single out evidence and instruct the jurors as to what they may infer from it. In *Pederson*, supra, it was recognized by our Supreme Court that this particular inference is one that affects the burden of going forward with the evidence, though it does not, it is said, affect the final burden of proof, which always rests on the State. Cf. State v. Childress, 78 Ariz. 1, 274 P.2d 333, 46 A.L.R.2d 1169 (1954).

■ Whether it is necessary to qualify this instruction by stating that possession of recently stolen goods alone is not sufficient to convict, we do not pass upon, because of the failure of the defendant to object to the instruction on this basis. State v. Griffith, 92 Ariz. 273, 376 P.2d 134 (1962); State v. Francis, 91 Ariz. 219, 371 P.2d 97 (1962); State v. Monks, 1 Ariz.App. 518, 405 P.2d 456 (1965).

■ We see no error in not specifying as to what specific goods were covered by the instruction. Under the facts and issues, the instruction may have had some pertinency to both the burglary charge, Porris v. State, 30 Ariz. 442, 247 P. 1101 (1926), and the theft of motor vehicle charge. State v. Jackson, 101 Ariz. 399, 420 P.2d 270 (1966). Nor, by giving an abstract instruction such as this, do we see any assumption on the part of the court that the defendant was in possession of recently stolen goods. This is particularly clear when the instructions are read as a whole, as they must be. State v. Corrales, 95 Ariz. 401, 391 P.2d 563 (1964).

■ The third and last contention relates to the failure of the court to qualify its instruction on circumstantial evidence with the Hodge's Rule [1] that a conviction cannot be had on circumstantial evidence alone unless the evidence is inconsistent with any reasonable hypothesis of innocence. In this case, there was neither a request for an instruction of this type nor an objection to the circumstantial evidence instruction given. Our Supreme Court has held it to be reversible error for the court to fail to give this instruction, *sua sponte*, when "all of the evidence" is circumstantial. State v. Tigue, 95 Ariz. 45, 47, 386 P.2d 402, 404 (1963).

It is our view that "all of the evidence" here was not circumstantial. There has been much written about the difference between direct and circumstantial evidence.[2] All authorities agree the distinction is elusive. Cf. McCoy v. United States, 169 F.2d 776, 784 (9th Cir. 1948). An illustration that brings home the fact there is no black and white difference between these two types of evidence is given in Ex parte Jefferies, 7 Okl.Cr. 544, 124 P. 924, 41 L.R.A., N.S., 749 (1912), a decision denominated by Wigmore as "the classical one,"

1. See State v. Woody, 7 Ariz. App. 26, 435 P.2d 861 (1967), for some of the history of this rule.

2. Jeremy Bentham, Rationale of Judicial Evidence, Specially Applied to English Practice, London, Hunt & Clarke, 1827, is a classic on this subject (see b. V, c. I); 1 Wigmore on Evidence §§ 25 and 26 provides another oft-used analysis.

recommended for profitable reading by all laymen. 1 Wigmore on Evidence § 26, note 1, at 401 (3d ed. 1940). We quote from *Jefferies:*

"By way of illustration, suppose that a number of persons witness a homicide, and all testify that they saw A. point a rifle at B., who was standing some 50 yards away; that they saw a flash and heard the report of an explosion; that they saw B. fall to the ground, and upon going to his body found a small hole in his forehead and a similar hole in the back of his head; and that B. immediately died. This would be called a case of direct and positive evidence. The evidence would be direct and positive only to the extent that they saw A. point a rifle at B., that they saw a flash and heard the report of an explosion, that they saw B. fall to the ground, that upon examination they found a hole through his head, and that he died immediately. No witness could testify as a matter of fact that he saw the bullet come out of the gun and pass through the head of B. That the witnesses saw a flash and heard the report of an explosion, based upon past experiences—that is, circumstances— would prove that A. had fired the gun. Yet it would be possible that A. may have missed B., and another may have fired the fatal shot."

124 P. at 924.

This illustration pertains to a factual occurrence. The same ambivalence is true of the "direct" testimony of the identity of an accused, for an identification is only testimony that the witness saw or heard an individual who has certain resemblance, the exactitude of which is incapable of scientific measurement, to the accused, thus making it more or less likely, depending upon the degree of similarity, that there is an identity of persons. However, such testimony seldom, if ever, eliminates the possibility that the circumstances in question do not lead to an erroneous inference, such as might very well be the case if the person observed was an identical twin.

In this case, we find sufficient evidence of the type falling within what is traditionally regarded as "direct" evidence so that we hold it was not reversible error to fail to give the Hodge's Rule instruction, *sua sponte.* The evidence to which we are referring is the eyewitness account of the boy who identified the defendant's picture as being that of the man he saw carrying clothes from the home that was burglarized. This testimony places this case within the holding of State v. Maynard, 101 Ariz. 239, 418 P.2d 576 (1966), that it is not fundamental error to fail to give the limiting instruction on circumstantial evidence in a case in which the prosecution did not rely exclusively upon circumstantial evidence for conviction.

For the reasons stated, the judgment of conviction as to the charge of grand theft is reversed and this count is remanded for new trial; the judgment of conviction as to burglary is affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.