**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Martin James MALONEY,
Defendant-Appellant.**

No. 77–3835.

United States Court of Appeals,
Ninth Circuit.

July 18, 1979.

Rehearing Denied Nov. 9, 1979.

Tom O'Toole, Federal Public Defender, David M. Heller, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

W. Ronald Jennings, Asst. U. S. Atty., Phoenix, Ariz., A. Bates Butler, III, 1st Asst. U. S. Atty., Jon R. Cooper, U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before BARNES and HUG, Circuit Judges, and CURTIS,* District Judge.

BARNES, Circuit Judge:

Appellant Maloney, a Navajo Indian, was found guilty of violating 18 U.S.C. §§ 1153 and 661 for taking $1,797 from Mrs. McCray, also a Navajo Indian, while on an Indian reservation. The sole issue raised on appeal is whether the district court erred in refusing to instruct the jury that they had

---

* The Honorable Jesse W. Curtis, United States District Judge for the Central District of California, sitting by designation.

to find that the appellant intended to permanently deprive Mrs. McCray of the money before they could find him guilty as charged in the indictment. Three concomitant questions arise from the consideration of that issue in the present appeal: (1) whether the offense of larceny is "defined and punished" by federal law as required in 18 U.S.C. § 1153, (2) whether the term "larceny" as used in 18 U.S.C. § 1153 is limited to its common law definition, and (3) whether the offense of larceny, if defined in the federal statute at issue here (18 U.S.C. § 661), incorporates the common law elements of the offense so as to necessitate a showing of an intent to permanently deprive the owner of his property.

## I.  FACTS

On July 9, 1977, Maloney visited Mrs. McCray[1] at her home located within an Indian reservation in Arizona. During the course of the visit while Mrs. McCray was away from the room, Maloney found and took a bundle of money from underneath a coffee table, said money being revenue from a service station owned by Mrs. McCray. Shortly afterward, he wrote down her telephone number and left.

The following day, Mrs. McCray discovered that the money was missing. After failing to locate appellant's home telephone number, she called his place of work and spoke to his supervisor, Sergeant Hale.[2] Mrs. McCray later testified that she did not want the matter to go any further and merely told Sergeant Hale to tell Maloney

to come out to see her and to return the money if he had it.

On July 12, 1977, Maloney was questioned by the Internal Affairs Division of his department and denied taking the money. He was instructed not to contact Mrs. McCray until the internal investigation was completed. On July 15, 1977, Maloney was again interviewed during which time he admitted taking the money. On July 20, 1977, he repaid Mrs. McCray the amount he had taken plus a small additional sum for her inconvenience. Subsequently, the Federal Bureau of Investigation became involved and an indictment was returned against the appellant.

At the trial, one of the key defense arguments was that Maloney had not intended to permanently deprive Mrs. McCray of the money.[3] The district court judge refused to give Defendant's Jury Instruction No. 1 on the grounds that it would require a finding of such an intent,[4] whereas 18 U.S.C. § 661, which was held by the district court to define a federal crime of larceny, would not require that finding. Timely objection was made by the defense. The jury found the appellant guilty and he received a probationary sentence.

## II.  DISCUSSION

### A.  Is larceny "defined and punished" by 18 U.S.C. § 661?

■ Certain offenses committed by one Indian against another within Indian coun-

---

1. In the record, Maloney refers to Mrs. McCray as his "grandmother" and she to him as her "grandson", although they are more distantly related.

2. At the time herein relevant, Maloney was employed as a highway patrolman by the Arizona Department of Public Safety.

3. Evidence was presented as to appellant's good reputation for honesty in the community and with his superiors at work. Appellant testified that he could not understand why he took the money except that he was possibly under a spell placed on him by a disgruntled Navajo shaman. Mrs. McCray testified as to appellant's theretofore outstanding character and ex-

pressed her belief that the appellant had been under a spell at the time he took the money.

4. Defendant's Jury Instruction No. 1 read as follows:

Before you can find the defendant guilty of this crime, the government must establish beyond a reasonable doubt that (1) the defendant willfully obtained or retained possession of property belonging to another without the permission or beyond any permission given; and (2) at the time of the taking of the property the defendant had the specific intent to permanently deprive the owner of the benefit of ownership of said property.

try [5] are expressly placed within the jurisdiction of the federal courts. 18 U.S.C. § 1153 provides in relevant part:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

To determine the necessary elements of any one of the offenses listed in the statute, with the exception of burglary and incest, one must initially turn to a specific federal statute which "defines and punishes" that crime or, if no federal law has been enacted covering the offense, to the laws of the state wherein the crime was committed. As stated in 18 U.S.C. § 1153:

In addition to the offenses of burglary and incest, any other of the above offenses which are not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

▮ In the present case, appellant was indicted for an offense which was larcenous in nature. 18 U.S.C. § 661 was used by the government to satisfy the 18 U.S.C. § 1153 requirement of a federal statute which "defines and punishes" the crime of larceny. However, because 18 U.S.C. § 661 does not directly state that it defines the offense of larceny and because the word "larceny" is not referred to in the language of the statute, a question is raised as to whether the statute does indeed define and punish the crime of larceny.

18 U.S.C. § 661 provides in relevant part:

Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished as follows:

If the property taken is of a value exceeding $100, or is taken from the person of another, by a fine of not more than $5,000, or imprisonment for not more than five years, or both; in all other cases, by a fine of not more than $1,000 or by imprisonment not more than one year, or both.

18 U.S.C. § 661 is based upon title 18, U.S.C. 1940 ed., § 466 (March 4, 1909, ch. 321, § 287, 35 Stat. 1144) [6] ("Section 466") with some minor changes. It is clear from the legislative history of Section 466 that Congress intended to enact a statute to deal with the crime of larceny. In the Senate debates after the proposed statute was read, the following exchange between Senators Kean and Heyburn occurred:

MR. KEAN. Will the Senator explain the last section read?

MR. HEYBURN. I will do so. This section conforms to the law of the large majority of the States in dividing larceny into two classes and grading the

---

**5.** "Indian country" is defined in 18 U.S.C. § 1151 as follows:

. . . the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished including rights-of-ways running through the same.

**6.** See Revisor's Notes to Section 661, as contained in New Title 18, United States Code, Crimes and Criminal Procedure with Official Legislative History and Revisory Notes (West 1948), at 2515.

punishment accordingly. The amendments, I think, are self-explanatory.

\* \* \* \* \* \*

I do not know that any further explanation could be made. It is a section which deals with existing law. It is based upon an existing statute which provides for the punishment of some offenses, except that it makes no distinction between a very grave offense and a more moderate form of the offense.

43 Cong. Rec. 1191 (1908).[7] Section 466 was derived from the Crimes Act of 1790, Act of April 30, 1790, ch. 9, § 16, 1 Stat. 116, which was directed to larceny as well as certain other offenses. *See United States v. Armata,* 193 F.Supp. 624, 626 (D.Mass.1961).

All of the courts which have considered the question have concluded that the offense defined in 18 U.S.C. § 661 is larceny. Many of these cases admittedly deal with the issue only in terms of *dicta. See United States v. Sharpnack,* 355 U.S. 286, 289 n. 5, 78 S.Ct. 291, 294, 2 L.Ed.2d 282 (1958)—(". . . the following offenses committed within federal enclaves are now made criminal by such enactments of Congress: . . . larceny, 18 U.S.C. § 661 . . . ."); *United States v. Francisco,* 536 F.2d 1293, 1295 (9th Cir.), *cert. denied,* 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 312 (1976) —("The definition and penalties for the specified crimes of murder, manslaughter, carnal knowledge of a female under the age of sixteen years, assault with intent to kill, arson, robbery and larceny are found in various sections of Title 18. *See* 18 U.S.C. §§ 1111, 1112, 2032, 113, 81, 2111 and 661, respectively."); *accord, Acunia v. United States,* 404 F.2d 140, 142 (9th Cir. 1968). Likewise, other courts have merely treated the proposition that 18 U.S.C. § 661 delineates a federal crime of larceny as an accepted tenet and proceeded to deal with related issues. *See e. g., United States v. Belt,* 516

F.2d 873 (8th Cir. 1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 790, 46 L.Ed.2d 646 (1976)—(whether larceny is a lesser included offense of the crime of robbery); *United States v. Bryant,* 454 F.2d 248 (4th Cir. 1972)—(whether valuation of stolen goods need be proved by the government). However, there is a line of cases which specifically holds that larceny is defined by 18 U.S.C. § 661. *Quinn v. United States,* 499 F.2d 794, 796 (8th Cir. 1974)—("Larceny is one such offense and it is defined by 18 U.S.C. § 661 . . . ."); *England v. United States,* 174 F.2d 466, 468 (5th Cir. 1949); *Dunaway v. United States,* 170 F.2d 11, 12 (10th Cir. 1948); *United States v. Gilbert,* 378 F.Supp. 82, 90 (W.D.S.D.1974)—("Title 18, U.S.C. § 661 specifically defines the federal version of larceny, and there is no reason to substitute a common law definition, even assuming that the common law definition may be slightly different.")

We conclude that 18 U.S.C. § 661 does define and punish a federal crime of larceny given the language of the statute and its legislative history. 18 U.S.C. § 661 was properly utilized below in conjunction with 18 U.S.C. § 1153. Resort to the state statute was unnecessary.[8]

B. Is "larceny", as the term is used in 18 U.S.C. § 1153, limited to its common law definition?

■ Appellant argues that in enacting 18 U.S.C. § 1153, Congress intended only to allow the federal government to prosecute Indians for certain common law crimes committed on reservations which would not otherwise be subject to any prosecution. According to his interpretation, the crimes listed in the statute are to be defined solely by common law. He thus contends that, while 18 U.S.C. § 661 may embody a definition of a federal crime of larceny, that statute may only be applied in conjunction with 18 U.S.C. § 1153 to the extent that it

---

7. Section 466 is cited in 43 Cong. Rec. 1191 (1908) as "Section 284".

8. The statute dealing with the crime of larceny in Arizona, where the offense herein was committed, like its federal counterpart, does not

expressly say that it covers the crime of larceny, does not directly refer to the term in its language and covers other offenses in addition to larceny. *See* 5 A.R.S. § 13–1802.

incorporates the common law definition of the crime.

The common law definition of larceny requires a showing of an intent to permanently deprive the owner of his property. 50 Am.Jur.2d, Larceny § 2; 52A C.J.S. Larceny § 1(1), *but see* for the proposition that "the only rule as to felonious intent in larceny to which all the cases can be reconciled, is that the intent of the taker must be to appropriate the stolen property to a use inconsistent with the property rights of the person from whom it is taken", *Pennsylvania Indemnity Fire Corp. v. Aldridge,* 73 App.D.C. 161, 163, 117 F.2d 774, 776 (1941); 52A C.J.S. Larceny § 27, n. 48 and accompanying text.

■ Turning to the legislative history of 18 U.S.C. § 1153, we find no support for appellant's interpretation of the intent of Congress in passing the statute. After a review of the history, we are convinced that the purpose of Congress was simply to punish Indians like other individuals under the same federal or territorial laws which govern the Indian country when they commit any of the enumerated offenses.

18 U.S.C. § 1153 was derived from the Act of March 3, 1885, ch. 341, § 9, 23 Stat. 385 ("Section 9"). Section 9 was initially added onto the end of an extensive Indian appropriations bill. 16 Cong. Rec. 934 (1885). It was removed by the Senate after being initially passed by the House, 16 Cong. Rec. 1748–49 (1885). Section 9 was later restored to the legislation after submission to a joint conference committee 16 Cong. Rec. 2533 (1885). Section 9 provided:

> That immediately upon and after the date of the passage of this act all Indians, committing against the person or property of another Indian or other person any of the following crimes, namely, murder, manslaughter, rape, assault with intent to kill, arson, burglary, and larceny within any Territory of the United States, and either within or without an Indian reservation, shall be subject therefor to the laws of such Territory relating to said crimes, and shall be tried therefor in the same courts and in the same manner and

> shall be subject to the same penalties as are all other persons charged with the commission of said crimes, respectively; and the said courts are hereby given jurisdiction in all such cases; and all such Indians committing any of the above crimes against the person or property of another Indian or other person within the boundaries of any State of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts and in the same manner, and subject to the same penalties as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States.

23 Stat. 385.

Section 9, most often referred to as "The Major Crimes Act of 1885", was passed by Congress in direct reaction to the Supreme Court's opinion in *Ex Parte Crow Dog,* 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883), wherein the Court concluded that an Indian tribe retained exclusive jurisdiction to punish an Indian for the murder of another Indian in the absence of any congressional direction to the contrary. *See United States v. Broncheau,* 597 F.2d 1260, 1264 (9th Cir. 1979). The congressional response in 1885 was prompt and unequivocal—conferring jurisdiction on the Federal courts to punish certain offenses by the passage of the Major Crimes Act, now 18 U.S.C. § 1153. Congress indicated its view that tribal remedies were either non-existent or incompatible with principles that Congress thought should be controlling. *See* 16 Cong. Rec. 934 (1885) (remarks of Rep. Cutcheon), and *id.* at 935 (Annual Report of the Secretary of the Interior as quoted by Rep. Cutcheon during the debate over Section 9 in the House of Representatives). As interpreted by the Supreme Court in *Keeble v. United States,* 412 U.S. 205, 211–212, 93 S.Ct. 1993, 1997, 36 L.Ed.2d 844 (1973), "Congress extended federal jurisdiction to crimes committed by Indians on Indian land out of a conviction that many Indians would 'be civilized a great deal sooner by being put under [*federal criminal*] laws and

taught to regard life and the personal property of others.' 16 Cong. Rec. 936 (1885) (remarks of Rep. Cutcheon)." (Emphasis added.)

There is no statement in the legislative history which supports the contention that the crimes delineated therein are to be limited to their common law definitions. On the contrary, the clear directive of Section 9 indicates that the federal or territorial laws are to be applied notwithstanding the fact that they might or might not define the offenses in terms of their common law meanings.[9] The major objections to Section 9 were summarized by Senator Dawes who (1) noted the opposition to the grant of federal jurisdiction over crimes committed by Indians within state territory and the concomitant removal of jurisdiction from the state and tribal courts, and (2) questioned the propriety of enacting the legislation by means of attaching it to an Indian appropriations bill. 16 Cong. Rec. 2385 (1885). However, Congress did not accede to the objections.

The current language of the statute provides that Indians committing one of the enumerated offenses are to be subject to the "same laws and penalties as all other persons" committing the offense "within the exclusive jurisdiction of the United States." Said offenses if not defined by federal law are to be defined by state law "in force at the time of such offense." The language of 18 U.S.C. § 1153 is not ambiguous and is controlling here as it is not in variance with the policy behind the legislation as a whole. *Cf., Trans Alaska Pipeline Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 56 L.Ed.2d 591 (1978). Congress, in passing the later amendments to 18 U.S.C. § 1153, was aware that the federal statutes covering the enumerated offenses, as well as the state laws "in force at the time of such offense", would not necessarily reflect the common law definitions of the offenses.[10]

Appellant cites to a passage in *United States v. Kagama,* 118 U.S. 375, 377, 6 S.Ct. 1109, 30 L.Ed. 228 (1886) to support his position. In *Kagama,* the Supreme Court upheld the constitutionality of Section 9 and in its opinion stated:

The above enactment [Section 9] is clearly separable into two distinct defini-

---

**9.** This Court in *Francisco, supra,* 536 F.2d at 1295–98, rejected a "static interpretation" of 18 U.S.C. § 1153 which argued that Congress intended to only incorporate state law as it existed at the time of the enactment of § 1153. Here, we reject a similar contention that Congress intended to freeze the definitions of the offenses in 18 U.S.C. § 1153 to their common law definitions despite the fact that the statute provides that the offenses are to be defined by reference to federal law.

**10.** Appellant cites to this court's decision in *United States v. Rider,* 282 F.2d 476 (9th Cir. 1960), wherein it was held that the crime of rape in 18 U.S.C. § 1153 was supposedly limited by Congress to the common law definition of the crime even though the statute stated that " 'rape shall be defined in accordance with the laws of the State in which the offense was committed' ". In *Rider,* the issue was whether the offense of carnal knowledge was included within the term "rape" as contained in the statute. The defendant there pointed out that the federal statute for rape, 18 U.S.C. § 2031, was based only upon common law and did not include the crime of carnal knowledge. Consequently, if the latter charge was applied to him via 18 U.S.C. § 1153, it would mean that he, as an Indian, would be subject to a punishment which he could not be charged with if he were white. He also aptly pointed out that Congress had specifically rejected a proposal to include "carnal knowledge" within the list of enumerated offenses. *Rider* is clearly distinguishable from the present case.

In addition, Congress in enacting the 1966 amendment to 18 U.S.C. § 1153, Act of November 2, 1966, Pub.L. 89–707, § 1, 80 Stat. 1100, found it "significant" that this court could find the congressional intent behind the statute unclear on the matter and could reach such an interpretation of the statute. Senate Report No. 1770, 89th Cong., 2d Sess., as contained in 3 [1966] U.S.Code Cong. & Admin.News, p. 3653 at 3655. Congress then amended the statute to include the offense of carnal knowledge. Later, in the 1976 amendment of the statute, Act of May 29, 1976, Pub.L. 94–297, § 2, 90 Stat. 585, Congress specifically added language to the effect that reference would be made to state law if any offense listed in the statute was not "defined and punished *by Federal Law in force within the exclusive jurisdiction of the United States* [emphasis added]". As noted in the House Report on the amendment, H.Rep. No. 94–1038, 94th Cong., 2d Sess., as contained in 3 [1976] U.S.Code Cong. & Admin.News, p. 1125 at 1126, the issue was "whether State or Federal substantive law applie[d]" not whether common law would be referred to.

tions of the conditions under which Indians may be punished for the same crimes as defined by the common law.

*Id.* at 377, 6 S.Ct. at 1110. However, subsequent statements in *Kagama* demonstrate that the Court was not restricting the meaning of the offenses listed in Section 9 to their common law definitions but rather following the plain language of the statute on its face. As stated in *Kagama, supra,* 118 U.S. at 377–78, 6 S.Ct. at 1110.

In this case, of which the State and its tribunals would have jurisdiction if the offence was committed by a white man outside an Indian reservation, the courts of the United States are to exercise jurisdiction as if the offence had been committed at some place within the exclusive jurisdiction of the United States. The first clause subjects all Indians, guilty of these crimes committed within the limits of a Territory, to the laws of that Territory, and to its courts for trial. The second, which applies solely to offences by Indians which are committed within the limits of a State and the limits of a reservation, *subjects the offenders to the laws of the United States passed for the government of places under the exclusive jurisdiction of those laws,* and to trial by the courts of the United States. (Emphasis added.)

The Court also specifically held that the statute was not intended to expressly limit the powers of a state. Rather, Congress was merely dealing with offenses relating to matters within its authority, those offenses having been previously defined by Congress in federal statutes.

The statute itself contains no express limitation upon the powers of a State or the jurisdiction of its courts. If there be any limitation in either of these, it grows out of the implication arising from the fact that Congress has defined a crime committed within the State, and made it punishable in the courts of the United States. But Congress *has* done this, and *can* do it, with regard to all offences relating to matters to which the Federal authority extends.

118 U.S. at 383, 6 S.Ct. at 1113. We consequently fail to find any congressional intent to limit the term "larceny" in 18 U.S.C. § 1153 to its common law definition.

C. Does the crime of larceny, as defined in 18 U.S.C. § 661, require an intent to permanently deprive the owner of his property?

Only one case has been located which directly considers this question. In *United States v. Henry,* 447 F.2d 283, 285–86 (3rd Cir. 1971), involving the theft of a vessel from within the maritime and territorial jurisdiction of the United States, the court found that 18 U.S.C. § 661 and its predecessor statutes were not mere codifications of the common law crime of larceny but were intended to broaden that offense. It was held that the statute did not require a showing of an intent to permanently deprive the owner of his property.

The offense described in 18 U.S.C. § 661 is effectuated by one who "takes and carries away" the personal property of another "with intent to steal or purloin". Clearly the interpretation of the latter phrase should control the resolution of the question raised here. However, the words "steal" and "purloin" are not words of art and do not have an accepted common law meaning. *United States v. Turley,* 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). It has been held a conviction pursuant to a statute which contains the word "steal" or "purloin" does not require a showing of an intent to permanently deprive as was required by the common law definition of larceny. *See e. g. Mitchell v. United States,* 129 U.S.App.D.C. 292, 294–295, 394 F.2d 767, 769–70 (1968); *Berard v. United States,* 309 F.2d 260, 261 (9th Cir. 1962); *see also Henry, supra,* 447 F.2d at 285, for cases which hold that the words "with intent to steal or purloin" were "intended to broaden the offense of larceny to include such related offenses as would tend to complicate prosecutions under strict pleading and practice."

Appellant cites to this circuit's decision in *LeMasters v. United States,* 378 F.2d

262, 267 (9th Cir. 1967), for the proposition that the phrase "takes and carries away" are "classic words used to define larceny". While that is so, the mere use of the phrase does not indicate that the criminal statute wherein it appears is *per se* limited to the common law crime of larceny. *Cf., United States v. Waronek,* 582 F.2d 1158 (7th Cir. 1978) (holding that 18 U.S.C. § 3659 does not require an intent of the accused to permanently deprive the owner of his property even though the statute applies to one who "embezzles, steals, or unlawfully takes, carries away, or conceals . . . with intent to convert to his own use . . ."). As noted in *LeMasters, supra,* 378 F.2d at 267–68, an examination of the legislative history and the total statutory language is required to ascertain the intended meaning of the words "steal" and "purloin" even when used in conjunction with the phrase "takes and carries away".[11] In *LeMasters,* after such a review, it was held that the statute there involved, 18 U.S.C. § 2113(b),

was limited and would not cover the crime of obtaining money from a bank under false pretenses.[12] While the language of 18 U.S.C. § 2113(b) is very similar to 18 U.S.C. § 661 in relevant parts, the legislative histories and purposes of the two statutes are distinctly different.

18 U.S.C. § 661 was derived from a statute which, while using the phrase "take and carry away, with an intent to steal or purloin", included within its scope crimes other than common law larceny. See § 16 of the Crimes Act of 1790, 1 Stat. 116.[13] Since that initial enactment, Congress reorganized the federal criminal code on more than one occasion. 18 U.S.C. § 661 is now placed within Chapter 31 of Title 18 which is entitled "Embezzlement and Theft". The title of § 661 is simply "Within Special Maritime and Territorial Jurisdiction." As noted in *LeMasters, supra,* 378 F.2d at 267–68, while the title of an act will not limit the plain meaning of the text, it may be of aid in resolving an ambiguity. *Accord, Ma-*

11. While not cited by appellant, we note the following language by the Supreme Court in *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952):

. . . where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

However, as discussed below, we do find a "contrary direction" by Congress in regards to 18 U.S.C. § 661.

12. It is noted that this court's decision in *LeMasters* has not been universally accepted. The Second, Fifth and Seventh Circuits have held that 18 U.S.C. § 2113(b) is not limited to the common law crime of larceny. *United States v. Guiffre,* 576 F.2d 126, 127–28 (7th Cir.), *cert. denied,* 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128 (1978); *United States v. Fistel,* 460 F.2d 157, 162 (2nd Cir. 1972); *Thaggard v. United States,* 354 F.2d 735, 736–38 (5th Cir. 1965), *cert. denied,* 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966). While the Fourth Circuit has expressed its support of *LeMasters* in dicta, *United States v. Rogers,* 289 F.2d 433,

437 (4th Cir. 1961), its opinion in *Rogers* fails to mention the controlling *Turley* case.

13. § 16 of the Crimes Act of 1790 states in relevant part:

And be it enacted, That if any person within any of the places under the sole and exclusive jurisdiction of the United States, or upon the high seas, shall take and carry away, with an intent to steal or purloin the personal goods of another; or if any person or persons, having at any time hereafter the charge or custody of any arms, ordnance, munition, shot, powder, or habiliments of war belonging to the United States, or of any victuals provided for the victualing of any soldiers, gunners, marines or pioneers, shall for any lucre or gain, or wittingly, advisedly, and of purpose to hinder or impede the service of the United States, embezzle, purloin or convey away any of the said arms, ordnance, munition, shot or powder, habiliments of war, or victuals, that then and in every of the cases aforesaid, the person or persons so offending, their counsellors, aiders and abettors (knowing of and privy to the offences aforesaid) shall, on conviction, be fined not exceeding the four-fold value of the property so stolen, embezzled or purloined; the one moiety to be paid to the owner of the goods, or the United States, as the case may be, and the other moiety to the informer and prosecutor, and be publicly whipped, not exceeding thirty-nine stripes."

guire v. Commissioner, 313 U.S. 1, 9, 61 S.Ct. 789, 85 L.Ed. 1149 (1941). The implication from the titles and placement of § 661 in Chapter 31 of Title 18 is that the statute was not enacted with the definitional refinements of the particular crime of larceny in mind, but rather with an intent to broaden the offense. Cf., Henry, supra, 447 F.2d at 285–86. In the context of dealing with embezzlement and theft crimes within the maritime and special jurisdictions of the United States, we can see no reason why Congress would have intended only to prohibit a specific form of theft, and then solely in terms of its common law definition, when other variations of the offense would not otherwise be covered by federal or state law.[14]

We hold that 18 U.S.C. § 661 is not limited in application to offenses amounting to common law larceny. Further, the Supreme Court's delineation of the meaning of the term "stolen" in Turley, supra, 352 U.S. at 417, 77 S.Ct. 397,[15] is deemed to be applicable here in interpreting the phrase "with intent to steal or purloin". Thus, 18 U.S.C. § 661 does not require the element of intent to permanently deprive the owner of his property.

## III. CONCLUSION

In light of the above discussion, we find that the district court judge did not err in refusing to give Defendant's Jury Instruction No. 1.

AFFIRMED.

HUG, Circuit Judge, dissenting:

The question presented by this appeal is whether it was necessary for the Government to prove that Maloney intended to deprive Mrs. McCray of her property per-

manently in order to convict him of larceny under 28 U.S.C. § 1153.

It is clear that the "intent to deprive permanently" is a requisite element of the common law crime of larceny. See Loman v. United States, 243 F.2d 327, 329 (8th Cir. 1957); 50 Am.Jur.2d, Larceny, § 2; 52A C.J.S. Larceny § 1(1). It is also clear that the crime with which Maloney is charged is "larceny" under § 1153. There is no jurisdiction to charge Maloney with violating § 661 as a substantive crime, for § 661 enters the picture only as a definitional statute. Thus, only if § 661 can be held to define "larceny" does it become applicable.

The majority holds, however, that one of the requisite elements of the common law crime of larceny—the intent to deprive permanently—has been eliminated by a redefinition of the crime of larceny in § 661. Yet, § 661 does not purport to define larceny. It never mentions the term.

Section 661 simply specifies certain conduct to be criminal, without reference to whether the statute is redefining the crime of larceny, or defining a new, more encompassing theft crime, including within its ambit conduct that would not have constituted common law larceny.

When Congress enacted the Major Crimes Act in 1885, the common law offense of larceny was listed as one of the offenses which, when committed by one Indian against another Indian in Indian Country, could be prosecuted in the federal courts. Where a federal statute uses a common law term of established meaning, without otherwise defining it, the term is given its common law meaning. United States v. Turley, 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1956). See also Morissette v. United

14. In one sense, the present case is the direct converse of the LeMasters situation. This court in LeMasters held that a more expansive interpretation of congressional intent behind 18 U.S.C. § 2113(b) was not proper as it would produce a result which would duplicate state law in the field and bring into federal jurisdiction innumerable small cases which would otherwise be adequately handled in state courts. On the other hand, § 661 deals with areas

outside of the normal state jurisdiction and, consequently, the rationale for the LeMasters decision would not be applicable here.

15. " 'Stolen' . . . includes all felonious takings . . . with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." 352 U.S. 417, 77 S.Ct. 402.

*States*, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952), quoted by the majority in n.11. The Supreme Court early acknowledged that the offenses enumerated in the Major Crimes Act were common law offenses. *United States v. Kagama*, 118 U.S. 375, 377–78, 6 S.Ct. 1109, 30 L.Ed. 228 (1886).

As the majority acknowledges, there is substantial authority that would lead to the conclusion that § 661 only defines common law larceny and thus that the "intent to deprive permanently" is, in fact, a requisite element of the crime defined by § 661. Several cases interpret the key phrase "takes and carries away, with [the] intent to steal or purloin" to be a codification of the common law crime of larceny. *LeMasters v. United States*, 378 F.2d 262, 267–68 (9th Cir. 1967); *United States v. Rogers*, 289 F.2d 433, 437 (4th Cir. 1961); *United States v. Posner*, 408 F.Supp. 1145 (D.C.Md. 1976).

In fact, the legislative history of § 661 and Senate debates, cited by the majority, lend credence to that argument. Were this the interpretation of § 661, I would have no difficulty in finding that "larceny", as used in § 1153, is defined and punished by § 661. If § 661 does simply codify common law larceny, this would also account for those cases cited by the majority which state that § 661 defines the crime of larceny in § 1153.

Most of the cases cited by the majority as supporting the position that § 661 defines the crime of larceny in § 1153 are cases where the court merely makes a casual reference to, or an enumeration of, those crimes in § 1153 which are defined by federal law. This is sound if § 661 is, in fact, interpreted as a codification of common law larceny. In those cases, the court was not faced with the question of whether § 661 can be held to define larceny for purposes of § 1153 when § 661 is given an expanded interpretation. In nearly all of these cases, there is no indication that the court is interpreting § 661 as other than common law larceny. The majority cites a separate line of cases which the Opinion states hold that § 661 defines larceny for purposes of § 1153. I respectfully disagree and submit that only one district court case does so.[1]

Given the strict construction required of criminal statutes, it is difficult to see how the majority can take one leap over two steps to find that § 661 defines § 1153 larceny and, in the same breath, find that § 661 has provided for a broader theft crime. The missing step is that nowhere in § 661 does the statute state that the broader theft crime is larceny.

The majority finds support for its interpretation of § 661 in the placement of that section in Chapter 31 of Title 18 under the heading of "Embezzlement and Theft". The majority finds that "[t]he implication

---

1. Of the line of cases cited by the majority as specifically holding that § 661 defines larceny for purposes of § 1153, the only case which actually does so is the district court case from the Western District of South Dakota, *United States v. Gilbert*, 378 F.Supp. 82 (W.D.S.D. 1974). The remainder of the cases do not.

In *Quinn v. United States*, 499 F.2d 794 (8th Cir. 1974), which does involve an Indian in Indian Country, the issue was solely whether failure to give an instruction on a lesser included offense was cognizable in a postconviction proceeding. The statements that larceny in § 1153 is defined by § 661 are clearly dicta. *England v. United States*, 174 F.2d 466 (5th Cir. 1949) does not involve an Indian, but involves simply a charge under § 661 of a non-Indian on a federal military base and the opinion includes a reference that larceny within § 661 may be of any personal property of another, whether of the United States or anyone else. The case has

no bearing upon whether § 661 defines larceny under § 1153, since it does not involve an Indian or Indian Country. It also has no bearing upon whether § 661 requires an intent to deprive permanently, since that was not an issue in the case. In *Dunaway v. United States*, 170 F.2d 11 (10th Cir. 1948), likewise, neither an Indian nor Indian Country is involved. The case involves acts committed on lands within the exclusive jurisdiction of the United States. The pertinent holding was simply that a charge of stealing and carrying away money was a charge within 18 U.S.C. § 466 (the predecessor to § 661). Again, the case has no bearing upon whether § 661 defines larceny under § 1153, since it does not involve an Indian or Indian Country, and it has no bearing upon the question of whether § 661 required an intent to deprive permanently, since it was not an issue in the case.

from the titles and the placement of § 661 in Chapter 31 of Title 18 is that the statute was not enacted with the definitional refinements of the particular crime of larceny in mind, but rather with an intent to broaden the offense." This highlights my point. If, in fact, Congress sought, by § 661, to define an expanded crime of "theft", we may not then turn to that section to define the offense of "larceny" under § 1153.

It must be emphasized that § 1153 and its jurisdictional counterpart, 18 U.S.C. § 3242, provide limited jurisdiction in the federal courts to prosecute an Indian for a crime against another Indian in Indian Country. As the majority notes, the very reason for the passage of the Major Crimes Act in 1885 was a reaction to *Ex Parte Crow Dog*, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883), which had held that there was no jurisdiction in the federal courts to hear such offenses. The Major Crimes Act of 1885 provided jurisdiction for a limited group of crimes enumerated therein. Other crimes were left to the Indian tribes.

Originally, the Act enumerated only seven crimes (murder, manslaughter, rape, assault with intent to kill, arson, burglary and larceny). This has been since expanded to the fourteen currently included in § 1153. Over the years, the following specific offenses were added: assault with a dangerous weapon, assault resulting in serious bodily injury, incest, robbery, carnal knowledge, assault with intent to commit rape and kidnaping. Had it been the intent of Congress to make all of the substantive crimes applicable in federal enclaves also applicable to Indian Country, it could have done so easily, by amending 18 U.S.C. § 1152 to eliminate the second paragraph. The section provides:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
>
> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

Congress did not elect to do so. Instead, federal jurisdiction for offenses committed by one Indian against another Indian in Indian Country continued to be restricted to those crimes enumerated in § 1153. Other crimes were added to the list only when Congress deemed it to be appropriate.

With this history of restricted federal jurisdiction as to offenses committed by one Indian against another Indian in Indian Country, I cannot concur in the majority's opinion that § 661 both expands the offense to a broader theft crime and yet defines larceny for purposes of § 1153.

There is no doubt that Congress can redefine the crime of larceny as it chooses. Had § 661 stated that the crime described therein was larceny, then § 661 would certainly be applied to define and punish the crime of larceny under § 1153. I agree with the majority that the common law meaning of the crimes enumerated in § 1153 are not fixed, but may be redefined by Congress in other federal enclave laws. The point, however, is that Congress has not done so with respect to larceny.

If, as the majority holds, § 661 is to be interpreted as a different crime, which departs from common law larceny, then I do not see how we can find that § 661 defines and punishes "larceny" under § 1153, absent some expression of Congress that this new crime is "larceny" under federal law.

There are in my opinion three choices available to us in strictly construing this criminal law of larceny under § 1153, all of which require that the jury should have been instructed that the accused must have had "the intent to deprive permanently" in order to be convicted of larceny.

1. We could hold that § 661 is the codification of common law larceny, as the legis-

lative history suggests and several cases hold;

2. We could find that § 661 does not define and punish larceny and thus look to the applicable state law, being that of Arizona. Under the state law, the intent to deprive permanently is requisite;[2] or

3. We could hold that § 661 defines and punishes common law larceny as well as other conduct, in which "the intent to deprive permanently" is not requisite, but that for the purposes of § 1153 only, the common law larceny aspect of that crime may be punished.

Any of the three alternatives requires reversal.

Lest it be thought that the failure to give the requested instruction was simply harmless error, I note that the central issue of the trial was Maloney's intent. It was admitted that Maloney left Mrs. McCray's house with the money. The question was his intent in doing so. The trial took only one and one-half days, and the jury deliberated over eight hours in reaching the verdict. During its deliberations, the jury requested the rereading of the instruction defining "intent" and "steal and purloin." There was evidence which could well have raised a reasonable doubt in the minds of the jury as to whether Maloney intended to permanently deprive Mrs. McCray of her property. There was error; it was not harmless; and I would reverse.

---

2. Under Arizona law the crime of larceny requires proof of an intent to deprive the owner of his property permanently. *State v. Wood*, 7 Ariz.App. 22, 435 P.2d 857, 859 (1968); *State v. Marsin*, 82 Ariz. 1, 307 P.2d 607, 608 (1957); *Whitson v. State*, 65 Ariz. 395, 181 P.2d 822, 823 (1947).