**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jean GRISTEAU, Defendant-Appellant.**

**No. 79–1385.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1979.

Decided Nov. 23, 1979.

Rehearing En Banc Denied Jan. 4, 1980.

Thomas E. Bush, Milwaukee, Wis., for defendant-appellant.

Joan F. Kessler, U. S. Atty., Elizabeth Adelman, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before PELL, SPRECHER, and BAUER, Circuit Judges.

BAUER, Circuit Judge.

Appellant Gristeau, a Menominee Indian, was found guilty of violating 18 U.S.C. §§ 1153 and 661 for taking a Ruger .357 magnum revolver from a tribal policeman while on the Menominee Indian reservation in Keshena, Wisconsin. The issue on appeal is whether the district court erred in refusing to instruct the jury that they had to find that the appellant intended to permanently deprive the officer of the gun before they could find her guilty as charged in the indictment.

I

Jean Gristeau is a Menominee Indian residing at Keshena, Wisconsin on the Menominee Indian reservation. On November 6, 1978, tribal policeman Gerald T. Weso went to the Gristeau home to pick up one Wanda Dick who was wanted by neighboring Shawano County authorities for a violation of work release rules. As Officer Weso escorted Dick to his police car, he and Gristeau argued about the arrest. Gristeau tried to pull Dick away from Officer Weso, scratching Officer Weso on the hand. She told her dog to bite Officer Weso, but the dog just growled and nipped at him. Officer Weso drew his revolver, intending to shoot the dog, but upon seeing a small child in the vicinity returned the revolver to his holster. As Officer Weso tried to put Dick into the squad car, Gristeau grabbed the revolver from Officer Weso's holster, walked back around the rear of the squad car, cocked the hammer and shot three times from various places near Officer Weso.

Gristeau had the gun for a minute or two when the sheriff and other officers arrived. She threw the revolver onto the front seat of the squad car and it fell on the squad car floor. When the other officers arrived, Gristeau yelled, "He's shooting his gun around, he's trying to kill my dog, see what he's doing." Gristeau continued resisting and two officers placed her in the squad car. Testimony at trial established that the revolver cost $164 to $165.

A two count indictment issued November 14, 1978 charged Gristeau with crimes under the Major Crimes Act, 18 U.S.C. § 1153.

Count I of the indictment charged that Gristeau "with intent to steal and purloin, took and carried away personal property in the custody of another, which property was of a value in excess of $100.00, that is, one 357 Caliber Revolver out of the holster of Gerald T. Weso, in violation of Title 18, United States Code, Sections 1153, 661."

Count II of the indictment charged that Gristeau "assaulted another with a dangerous weapon with intent to do bodily harm and without just cause or excuse, that is, firing a 357 Caliber Revolver at Gerald T. Weso, all in violation of Title 18, United States Code, Sections 1153, 113(c)."

Judge Warren denied defendant's motion to dismiss Count I, and the case proceeded to a jury trial on February 2, 1979.

The trial judge instructed the jury that the Government had the burden to prove "that the defendant took and carried away that property with intent to steal said personal property." The Court refused to de-

liver defendant's instruction that "[i]ntent to steal means intent to permanently deprive another of his property." Instead, the Court instructed the jury that

'[t]o steal' means to acquire or possess as a result of some wrongful act or dishonest act or taking, whereby a person willfully obtains or retains possession of property which belongs to another, without or beyond any permission given, and with the intent to deprive the owner of the benefit of ownership.

On February 7 the jury found the defendant guilty on Count I and not guilty on Count II. Post-conviction motions were filed on February 14 and were denied by Judge Warren on March 13, 1979. Gristeau was given a suspended sentence and placed on probation for one year.

A timely notice of appeal was filed on April 13, 1979. No motions have been filed for stay of sentence pending appeal.

## II

The Major Crimes Act, 18 U.S.C. § 1153, gives federal courts jurisdiction over certain crimes committed by Indians on Indian territory. In relevant part, 18 U.S.C. § 1153 provides:

Any Indian who commits against the person or property of another Indian or other person . . . larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States. . . .·

\*    \*    \*    \*    \*    \*

[A]ny other of the above offenses which are not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such of-

fense was committed as are in force at the time of such offense.

Gristeau contends that 18 U.S.C. § 661,[1] under which she was convicted, does not "define and punish" larceny. Section 1153, Gristeau argues, codifies the common law definition of larceny, which requires that the defendant have the intent to permanently deprive the victim of his property. Section 661, in contrast, provides only that the defendant have the intent to "steal or purloin." 18 U.S.C. § 661. If § 1153 codifies common law larceny, rather than the offense described in § 661, Gristeau's conviction must be reversed for failure to give defendant's requested instruction. Gristeau further contends that even if § 661 defines larceny as used in § 1153, § 661 itself requires an intent to permanently deprive.

The questions raised in this appeal were recently addressed in *United States v. Maloney*, 607 F.2d 222 (9th Cir. 1979). In that opinion, the Ninth Circuit joined the Eighth and Tenth Circuits in holding that § 661 defines the federal crime of larceny contained in § 1153 and that the crime is not limited to its common law definition. *Quinn v. United States*, 499 F.2d 794, 796 (8th Cir. 1974); *Dunaway v. United States*, 170 F.2d 11, 12 (10th Cir. 1948); *United States v. Gilbert*, 378 F.Supp. 82, 90 (D.S.D. 1974). No court has taken a contrary view.

The *Maloney* court reviewed the legislative history of §§ 661 and 1153, concluding that § 661 "defined and punished" larceny. *Maloney*, 607 F.2d at 226. The court then held that the element of "intent to steal or purloin" in § 661 did not require a showing of intent to permanently deprive because Congress intended to broaden the offense. Instead, the court adopted the definition of "stolen" applied by the Supreme Court in *United States v. Turley*, 352 U.S. 407, 417, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957):

If the property taken is of a value exceeding $100, or is taken from the person of another, by a fine of not more than $5,000, or imprisonment for not more than five years, or both; in all other cases, by a fine of not more than $1,000 or by imprisonment not more than one year, or both.

---

1. 18 U.S.C. § 661 provides:

Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished as follows:

'Stolen' . . . includes all felonious takings . . . with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny.

*Maloney*, 607 F.2d at 231.

We think the reasoning of the Ninth Circuit in *Maloney* is sound and we adopt it here. Appellant has advanced no argument not addressed in *Maloney*. Accordingly, we hold that 18 U.S.C. § 661 defines and punishes the federal crime of larceny contained in § 1153, and that 18 U.S.C. § 661 does not require an intent to permanently deprive. The trial judge therefore properly refused to give the requested jury instruction.

Appellant's conviction is AFFIRMED.

SPRECHER, Circuit Judge, dissenting.

The issues raised in this appeal are (1) whether section 661 of title 18 of the United States Code defines "larceny" as used in section 1153 of that title and (2) if it does define larceny, whether section 661 requires an intent to deprive permanently. Contrary to the conclusion reached by the majority, I would hold that, to the extent that it defines larceny, section 661 requires an intent to deprive permanently.

Section 1153 grants federal jurisdiction for certain enumerated crimes committed by an Indian in Indian country, the relevant one here being larceny, 18 U.S.C. § 1153. Since section 1153 is merely a jurisdictional statute, there must be a corresponding substantive criminal statute under which a defendant has been charged before a federal court can exercise jurisdiction. If any of the offenses enumerated in section 1153 "are not defined and punished by Federal law in force within the exclusive jurisdiction of the United States," then they "shall be defined and punished in accordance with the laws of the State in which such offense was committed." 18 U.S.C. § 1153.

Defendant first contends that section 661, the substantive statute under which she was charged, does not define the crime of larceny. Since section 1153 grants federal jurisdiction for larceny and since section 661 nowhere states that it defines larceny, defendant argues that her indictment was fatally defective and that her conviction must therefore be reversed.

The majority correctly points out that this issue was decided against the defendant in the recent case of *United States v. Maloney*, 607 F.2d 222 (9th Cir. 1979). However, I respectfully disagree with the majority's assertion that the issue was also decided by the courts in *Quinn v. United States*, 499 F.2d 794 (8th Cir. 1974) and *Dunaway v. United States*, 170 F.2d 11 (10th Cir. 1948). As stated by Judge Hug in his dissent in *Maloney*, there was only one case prior to *Maloney* which specifically decided that section 661 defined larceny for purposes of section 1153. That case was a district court opinion in *United States v. Gilbert*, 378 F.Supp. 82 (D.S.D.1974). See *United States v. Maloney*, 607 F.2d at 232 and n. 1 (Hug. J., dissenting). In the other cases cited by the majority here and by the majority in *Maloney*, the courts either stated in *dicta* that section 661 defined section 1153 larceny or they discussed larceny and section 661 outside the context of section 1153.[1]

Nevertheless, based on the legislative history of section 661 as discussed in *Maloney* I would be willing to accept the premise that section 661 encompasses larceny for purposes of section 1153 jurisdiction. Like Judge Hug, however, I cannot make the jump made by the majority to hold that larceny does not require the intent to deprive permanently. The majority based its holding on *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), in which the Supreme Court concluded that the word "stolen" is not a term of art

---

1. In one case, *United States v. Henry*, 447 F.2d 283, 285–86 (3d Cir. 1971), the court held that section 661 was broader than common-law larceny so that there was no need to show permanent deprivation. Jurisdiction in *Henry* was not based on section 1153, however. As will be discussed in the text *infra*, I believe that the express reference to larceny in section 1153 is a key distinguishing factor.

synonymous with common law larceny. Accordingly, the *Turley* Court held that the intent to deprive permanently—although a requisite element in the crime of larceny— was not a requirement for "stealing." Since section 661 prohibits a taking "with intent to steal or purloin," the majority here has concluded that, like the statute addressed in *Turley*, section 661 does not require the intent to deprive permanently. Moreover, since it had already concluded that section 661 defines larceny for purposes of section 1153, the majority concludes that larceny under section 1153 does not require the intent to deprive permanently. I believe that the position taken by the majority is contrary to the express language of section 1153 and to the rules of construction of criminal statutes.

Long ago, in *Todd v. United States*, 158 U.S. 278, 15 S.Ct. 889, 39 L.Ed. 982 (1895), the Supreme Court expressed the rule for construction of criminal statutes:

> It is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be· punished under such a statute unless clearly within its terms. "There can be no constructive offences, and, before a man can be punished, his case must be plainly and unmistakably within the statute."

*Id.* at 282, 15 S.Ct. at 890 [citations omitted]. This standard of strict construction has been repeatedly applied to criminal statutes and is equally applicable to section 1153. See *Kills Crow v. United States*, 451 F.2d 323, 325 (8th Cir. 1971), *cert. denied*, 405 U.S. 999, 92 S.Ct. 1262, 31 L.Ed.2d 467 (1972). Applying this standard to the statutes in question, I cannot support the position taken by the majority.

Larceny is a term of art with an accepted common-law definition that has historically required an intent to deprive permanently. See *Loman v. United States*, 243 F.2d 327,

329 (8th Cir. 1957). And as the Supreme Court stated in *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952):

> [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from it.

*Id.* The majority here has not attempted to reconcile its holding with *Morissette's* directive. It has, however, relied on the reasoning of the *Maloney*· court which did touch on the question raised in *Morissette*. In a footnote, the *Maloney* court stated:

> [A]s discussed below, we do find a "contrary direction" by Congress in regards to 18 U.S.C. § 661.

*Maloney*, 607 F.2d at 230 n. 11. That "contrary direction," according to the court, was the predecessor of section 661, a statute which included within its scope "theft" crimes other than common-law larceny. I cannot accept the court's position. Even assuming, *arguendo*, that section 661 includes within its purview the definition of larceny, the mere fact that it also includes crimes other than larceny does not mean that Congress intended the requirements for larceny to be coterminous with the requirements for other "theft" crimes. For such a radical departure from the accepted definition of larceny, there must be a more express "contrary direction" from Congress.

Although, in 1976, Congress did change one of the crimes enumerated in section 1153 to conform with its federal substantive counterpart,[2] it did not change the word

2. In House Report No. 94–1038 for the Indian Crimes Act of 1976, the House Judiciary Committee stated:

> Present § 1153 refers to "assault with intent to kill." The actual title of the offense defined in 18 U.S.C. § 113(a) is "assault with

intent to commit murder," so the bill changes the title of the enumerated offense in § 1153 to conform to the title in 18 U.S.C. § 113(a). H.Rep.No.94–1038, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. and Admin. News, pp. 1125, 1129. See *United States v.*

"larceny." Consequently, as I can find no contrary directive from Congress, I would hold that larceny must be given its accepted common-law meaning which includes the intent to deprive permanently.

In his dissent in *Maloney*, Judge Hug listed the three choices available in strictly construing larceny under section 1153:

1. We could hold that § 661 is the codification of common law larceny, as the legislative history suggests and several cases hold;

2. We could find that § 661 does not define and punish larceny and thus look to the applicable state law . . . ; or

3. We could hold that § 661 defines and punishes common law larceny as well as other conduct, in which "the intent to deprive permanently" is not requisite, but that for the purposes of § 1153 only, the common law larceny aspect of that crime may be punished.

*Maloney*, 607 F.2d at 234 (Hug, J., dissenting). As in *Maloney*, adopting any of the alternatives listed above requires vacating defendant's conviction. If section 661 does not define larceny so that defendant should have been charged under a state statute, then the indictment was fatally defective. If section 661 does define common-law larceny, the conviction should still be reversed because the trial court did not instruct the jury on the essential intent element. I would reverse the judgment below.

*Altaha*, No. CR–70–412 (D.Ariz. February 10, 1971), reprinted in Defendant's Reply Brief at 16, which held that "assault with intent to kill" was not defined and punished by the federal statute entitled "[a]ssault with intent to commit murder."